## No. 11,904.

### MRS. JENNIE B. FENN vs. UNION CENTRAL LIFE INSURANCE COMPANY.

In case an insurer and insured agree that the latter may give and the former will accept notes for the first annual premium on a policy of life insurance, payable in instalments, and that the default of the maker in paying any one of them at maturity should operate as a revocation of the policy, default on the part of the insured makes the contract void *ipso facto*, both as to the insured and the beneficiary.

The rights of a beneficiary in a life insurance policy are purely derivative, and altogether dependent upon the terms and conditions of the contract. He can insist upon the integrity of the contract being preserved and maintained in *statu quo*. Nothing more. He can not claim the right to be placed in a better position than the insured has placed himself.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Dinkelspiel & Hart* and *James J. McLoughlin* and *Frank McGloin* for Plaintiff, Apellant.

*Fenner, Henderson & Fenner* for Defendants, Appellees.

Argued and submitted February 13, 1896.
Opinion handed down March 9, 1896.

The opinion of the court was delivered by

WATKINS, J. This suit is brought by the beneficiary named in a life insurance policy for the recovery of five thousand dollars on a

contract of life insurance, and from a judgment in favor of the defendant the plaintiff has appealed.

Resistance to the plaintiff's demand, as stated in defendant's answer, is that notwithstanding the policy of life insurance was executed in due form and duly delivered to the insured, " it was not in force at the date of (his) alleged death on the 30th of December, 1893.

"That the said policy was, at the time, absolutely null and void, and of no effect for this, to-wit: that the said policy was issued *in terms upon its face*, in consideration of the payment, when due, of any and all notes given for premiums or parts of the same, and contains *upon its face the express stipulation* that the failure upon the part of the insured to pay any of the first three annual premiums or notes, or interest upon notes, given to the company for any of said premiums on or before the days upon which they may become due, at the office of the company in the city of Cincinnati, 'or to the authorized agent on producing a receipt therefor signed by the president, vice president or secretary, *should avoid and nullify the policy without action on the part of the company or notice to the assured or beneficiary;* and all payments made upon said policy shall be deemed earned as premiums during its currency, and the further stipulation that all notes given for premiums, with their conditions, were made a part of the contract," etc.

That Charles J. Fenn, the insured, "*in payment* of the first annual premium upon the said policy, gave four certain promissory notes, all dated on September 15, 1893,"—contemporaneously with the date on which the policy was executed—and each one of which contained "upon its face the express stipulation *that the policy in part payment of the premium on which it was given, should, without notice to any of the parties interested therein, be null and void on the failure to pay the note at maturity*," etc.

That each of the notes contained the further stipulation "*that, in case the note was not paid at maturity, the full amount of premium should be considered earned as premium during its currency, and the note payable without reviving the policy or any of its provisions.*"

That at the time of the death of the insured the note for twenty-four dollars and fifty cents was past due and unpaid, and "*the policy was thereby rendered null and void and of no effect.*"   (Our italics.)

We have made from the answer the foregoing extracts as clearly expressing the theory on which the insurance company seeks to establish its non-liability on its contract, and we take the following to be an accurate synopsis of it, viz.:

1. That it appears *upon the face of the policy* and from the *terms therein employed* that it was issued in consideration of certain notes which the insured gave in payment of the first premium.

2. That *upon the face of the policy* it is stipulated that the failure to pay any of the first three annual premiums, or notes give.1 for premiums, on or before their maturity, " *should avoid and nullify the policy without action on the part of the company, or notice to the assured or beneficiary.* "

3. That "in payment of the first annual premium upon said policy," the insured executed four notes, one of which was due and unpaid at the time of the death of the insured; and that each of said notes contained the stipulation that, upon failure of the insured to pay at maturity, the policy should be revoked and annulled *ipso facto*, and without notice to him or the beneficiary.

4. That each note contained the further stipulation that in case any of the notes should not be punctually paid at the maturity thereof, " the full amount of premium should be considered as earned as premium during its currency, and the note payable, without reviving the policy or any of its stipulations."

Manifestly, the defendant's contention is that the failure of the insured to pay one of the four notes, which he *gave in payment of the first premium*, resulted in the *annulment, ipso facto*, of the policy, *without action on the part of the insurance company*, or *notice to the beneficiary;* and not that the policy had not been regularly executed and issued, and delivered into the possession of the insured for the benefit of the beneficiary.

It is equally evident that, in support of the alleged revocation of a previously existing and valid policy, the defendant solely relies upon the *face of the policy* and the terms thereof, and those of the notes of the insured.

On the contrary, the contention of the plaintiff is that there is nothing in the recitals of the policy to indicate that the insured gave notes in payment of the first annual premium; that she had no knowledge or notice of. their existence, and is in no way bound by the stipulations thereof, and has a right to rely upon the policy as

the beneficiary therein named, and to insist upon the company's performance of its obligations therein contained, as stipulations *pour autrui*, of which she claims the benefit.

There is no controversy as to the facts. They are admitted by the plaintiff to be as stated; but her counsel objected to the introduction in evidence of the notes of the insured, or any statement in reference to them, on the ground that same are not binding upon her as beneficiary, representing as they do transactions between the company and the insured, to which she was neither a party or privy. That while there was a blank space on the notes expressly reserved for her signature, the same was never signed by her as beneficiary; and that the same had never been presented to her for her signature. That the policy acknowledges the receipt of the first premium by the company, and declares that the failure to pay any particular note does not annul or avoid the same; and that the company alleges the default of the insured "and claims as the debt of the insured the amount of the unpaid notes." That if the effect of the evidence would be to destroy the contract of insurance, the evidence is further inadmissible on the ground that a contract can not be created and destroyed by the same act. That while the notes and the evidence of the default of the insured may be binding and conclusive between the insured and the company, same can not have any effect upon the rights of the plaintiff as beneficiary.

In connection with the notes of the insured the defendants' counsel offered in evidence the company's receipt which is annexed to the policy. To this offer the same objections were urged.

The court ruled that the objections went to the effect which is to be given to the testimony, and not to its admissibility.

We think the ruling was correct, as it is always the better practice to admit testimony rather than to reject it, as by this means the court is placed in possession of all the facts, and is thereby frequently aided in arriving at a juster and more accurate conclusion than it could otherwise have done.

Having premised this much, we are prepared to examine and consider the terms of the insurance company's engagement.

The policy provides that the company insured the life of Charles J. Fenn in the amount of five thousand dollars for the term of his natural life, and upon the death of the insured it agreed to pay that sum to Jennie B. Fenn his mother or to her legal representatives,

the balance of the year's premium, if any, and all other indebtedness to the company being deducted.

It provides further, that " in case the insured dies while the said term policy is in force the amount of foreborne premiums shall be * * * deducted from the sum insured."

Upon the reverse of the policy are endorsed certain conditions and agreements, from which we extract the following, viz. :

1.  " This policy shall not be valid and binding until the first premium is paid to the company or its authorized agent, and the receipt hereto attached countersigned by the company's agent, and delivered during the lifetime of the assured; and all premiums or notes, or interest upon notes given the company for premiums, shall be paid on or before the days upon which they become due," etc.

8.  " Upon the violation of any of the foregoing conditions this policy shall be null and void without action on the part of the company, or notice to the insured or beneficiary, and all payments made herein * * * shall be forfeited to the company," etc.

As if to make " assurance doubly sure," the following general stipulation is appended at the foot of the said " conditions and agreements," viz. :

"The contract of insurance between the parties hereto is completely set forth in the policy, and the application for the same, nor is any forfeiture under it waived save by an agreement in writing, signed by the president," etc.

The receipt annexed to the policy contains the following recitals, viz. :

" Received ninety dollars and fifty cents, being the first premium upon policy number one hundred and nine thousand five hundred and eighty-one, issued upon the life of Charles J. Fenn, continuing said policy in force to the 15th of September, 1894.

" This receipt is subject to the conditions of any and all notes which have been given, or may be given, for the amount of said premium, or any part thereof," etc.

It was signed by the secretary and countersigned by the local agent of the company, and became an essential part of the contract of insurance. Thereupon the policy was delivered to the insured, and the rights of the beneficiary named in the policy attached; but they attached subject to the conditions and limitations imposed by the terms and the conditions of the contract and the receipt.

35

The policy, receipt and notes must be deemed and treated as parts of the same engagement.

They are of contemporaneous date, and each one refers to the other. Isador Bush & Co. vs. Wolf, 48 An.

The rights of a beneficiary in a policy of life insurance are derivative, and altogether dependent upon the terms and conditions of the contract. He can insist upon the integrity of the contract being preserved and maintained *in statu quo;* but he can not claim the right to be placed upon a better footing than the insured has placed himself.

In the instant case the insurer and insured consented and agreed that the latter might give, and that the former would accept, time notes for the first annual premium, in instalments; and that the default of the maker in paying either at its maturity should have the effect of resolving the contract and avoiding the policy.

Of that option the insured availed himself, and afterward failed to pay the note first maturing, and in that situation he died.

On this state of facts the policy became null and void, *ipso facto* with regard to the insured and the beneficiary.

Judgment affirmed.