Court of Appeal of Louisiana. Second Circuit.

May 4, 1934.

Warren Hunt, of Rayville, for appellant.

Hudson, Potts & Bernstein, of Monroe, for appellees.

DREW, Judge.

Eugene Howard instituted this suit against Richard S. Rowan and the Maryland Casualty Company, of Baltimore, Md., for the sum of $2,750 for injuries he received when an automobile, driven by Rowan, jammed into the back of a wagon in which he was riding, causing him to be thrown to the pavement. The injuries alleged are that both of his arms were bruised, crushed, and sprained and one of them broken. He claims $100 for doctor's bills, $150 for loss of time, $1,500 for pain and suffering, and $1,000 for permanent injury to his hands and arms.

Plaintiff alleged that he was standing in the back of a wagon which was traveling on the extreme right side of the paved road, and that he was displaying a lantern with a red globe at the time the car driven by Rowan crashed into the back of the wagon. He then made the necessary allegations against Rowan's insurer.

Defendant Rowan denied any negligence on his part and pleaded the contributory negligence of plaintiff as a bar to his recovery. He alleged that there was no light displayed on the wagon, which was a violation of the state law (Act No. 21 of 1932, § 9, subd. 7), and therefore plaintiff's negligence in this respect barred his recovery.

The insurance company adopted the answer of defendant Rowan, and further averred that it was not liable for the reason that Rowan had not given it written notice of the accident immediately after it occurred.

The lower court rendered judgment for defendants and rejected plaintiff's demands. He has appealed to this court.

Plaintiff was returning to his home from church on the night of February 26, 1933. The night was dark and a slow rain was falling. He was traveling in an open wagon which was drawn by two mules, and in the wagon with him were nine other negroes. Before leaving for church on this afternoon, the driver of the wagon had borrowed from one of his friends a lantern with a red globe; the globe being protected by a wire frame. It was such a lantern as is used by railroad brakemen. On this night, before leaving the church, the lantern was lighted and given to one of the other occupants of the wagon who took his position in the back of the

wagon and held the lantern as a warning to others using the highway. It was necessary to travel west on highway No. 80 to return to their homes. Soon after leaving the church, plaintiff, who was the preacher, and his companion, were overtaken and they boarded the wagon, making ten negroes in the wagon at that time. Some time after plaintiff got into the wagon, he placed himself in the back of the wagon on the left side. He did not like the manner in which the lantern was being used or displayed, so he took the lantern and held it where it could be seen by on-coming motorists, and, when a car would be coming toward them from the west, he would hold the lantern high so it could be seen from both front and rear. Plaintiff was holding the lighted lantern in such a position when defendant Rowan, who was driving an automobile in the same direction as the wagon was traveling, ran into the rear of the wagon and caused plaintiff to be thrown from it to the pavement, the lantern falling with him. The light of the lantern was extinguished by the fall, but the lantern was picked up from by the side of plaintiff after the accident. These facts are testified to with little variance by all the occupants of the wagon, and their testimony sounds with truth.

Defendant Rowan and his companion, a young lady school teacher, who was in the car with him, testified there was no lighted lantern in or on the wagon that could be seen. We are sure they did not see the lantern. The reason Rowan and his companion did not see the lighted lantern is easy to explain when we take their testimony, which is that a car was coming toward them from the west and the lights of that car were shining in their eyes. Rowan testified that he could not remember whether he was blinded completely or not; that he was traveling at a rate of speed of about 30 miles per hour, and, when the lights of the car shone in his eyes, he slowed down a little until the light no longer was in his eyes, and then saw the wagon which was about 20 feet ahead of him; that he veered his car to try and miss the wagon, but failed. With the lights of the on-coming car in their eyes, at least impairing their vision, if not blinding them for the time being, it can be readily seen why they did not see the lantern on the wagon.

We are satisfied that Rowan and his companion are honest in their belief that there was no lighted lantern on the wagon. However, the preponderance of the testimony and circumstances shows them to be mistaken, for there was a lighted lantern on the rear of the wagon in full compliance with the law of this state (Act No. 21 of 1932, § 9, subd. 7) requiring a red light to be displayed on the rear of a wagon when traveling on the highways at night. It is undisputed that the wagon was traveling on its extreme right side of the road. The driver of the wagon and the plaintiff, who was riding therein, were free from any negligence that in any way contributed to the accident.

Defendants pleaded contributory negligence without alleging it in the alternative, and, under a strict construction of their pleadings, are held to have admitted their own negligence, but, be that as it may, defendant Rowan under the evidence was guilty of gross negligence in not seeing the wagon, and whether his failure to see it was due to his not keeping a proper lookout or to his being blinded by the lights of the on-coming car is immaterial. In either instance, his negligence was the sole proximate cause of the accident, and he is liable for the damage caused by said accident.

Plaintiff is a negro preacher who attempted to farm during the week and preach on Sundays. He has very little education. His earnings from preaching were the collections, which amounted to $4 or $5 per week. Due to his injuries, he was prevented from preaching four or five Sundays and lost not more than $20 on that account. The time he lost out of his crop could not, under the testimony, have amounted to more than a like amount; so we can safely fix his loss of earnings, due to his injuries, at $40. His doctor's bill was $60.50.

The accident happened on February 26, 1933. The doctor treated him at home and took him to Monroe for X-rays. The number of visits made to his home were nine, and he was treated at the doctor's office fifteen times during February, March, and May of that year; and was declared by his doctor to be able to return to work on May 20, 1933. There was no permanent disability. The only doctor who testified in the case was the one who attended plaintiff, and he described his injuries as general body contusions, sprain of both wrists, and fracture of the lower one-third radius (left). Both arms were placed in splints; the one that was sprained being kept in splints almost four weeks and the fractured arm for about six weeks. The arm which was fractured continued to be tender and give pain to plaintiff when using it up to the time of trial, which was in September of the same year. The doctor testified that was to be expected and the

tenderness might last for twelve months from the date of injury. Since there is no permanent injury, the amount so prayed for will be disallowed.

The only amount we now have to determine is for pain and suffering. There is no set rule to govern, and any amount we might fix would necessarily be arbitrary. In a recent case decided by this court, namely, Elliot v. Rhymes, 153 So. 600 (not yet reported [in State report]), we awarded a young school boy $750 for pain and suffering and doctor's bill, which amounted to $125, or, in other words, we awarded $625 for pain and suffering. The young man in that case was more severely injured than the plaintiff in this case, and we think suffered a great deal more. An amount of $600 is sufficient for pain and suffering in this case. Therefore the full amount for pain and suffering, doctor's bills, and loss of earnings to which plaintiff is entitled is $700.50, with 5 per cent. per annum interest from judicial demand until paid, which amount is awarded against the defendant Rowan.

■ The policy of insurance under which the insurance company is alleged to be liable contained the following condition: "B. Immediate written notice of any accident, like notice of any claim, and like notice of any suit resulting therefrom, with every summons or other process, must be forwarded to the home office of the company, or to its authorized agent, provided, however, that failure to give such immediate notice shall not invalidate any claim made by the assured, if it shall be known not to have been reasonably possible to give such notice immediately and that notice was given as soon as was reasonably possible. Whenever requested by the company, the assured shall aid in securing information, evidence, and the attendance of witnesses; and shall at all times render to the company all reasonable co-operation and assistance."

The word "immediate" has been held by the courts to mean within a reasonable time. The facts regarding the notice given are as follows:

The next day after the accident, plaintiff, with a broken arm and other injuries, called upon defendant Rowan and asked for pay for his injuries, which request was refused. On April 6th, 38 days later, Rowan received a letter from plaintiff's attorneys making a demand, and on May 8, 1933, or 71 days after the accident, Rowan sent this letter to the defendant insurance company. However, on April 12, 1933, an accident blank was filled out by Rowan and given to the defendant insurance company's agent. On said blank Rowan made this statement: "At the time of the accident, the assured did not consider it of sufficient importance to report."

Such a conclusion by Rowan was altogether unjustified. He knew he had had an accident and that plaintiff was injured to the extent of having his arm broken. This written report of the accident on April 12th is the first written report, and was 44 days after the accident. He claims to have given a verbal notice on April 6th, which was 38 days after the accident. The insurance company contends that written notice of the accident given 44 days after the accident, under the circumstances above related, is not a compliance with the provision of the contract of insurance, as above quoted, and that failure to comply with the condition set out in said contract amounts to a forfeiture of all rights under the contract of insurance; that compliance with said condition is a condition precedent to liability. The courts of this state, and nearly every other state of the Union, have so held.

In the case of Dennis Sheen Transfer Company v. Georgia Casualty Company, 163 La. 973, 974, 113 So. 165, 166, the Supreme Court of Louisiana said: "The giving of immediate notice to the insurer of the accident insured against is a matter of importance to it. Prompt notice places the insurer in a far better position to ascertain the facts relating to the accident, and the names of the witnesses by whom those facts may be established, than a notice long delayed, and frequently enables the insurer to make a more satisfactory adjustment than could be otherwise made. The policy makes the giving of immediate written notice by the assured a condition precedent to liability. Where such is the case, there can be no recovery on the policy by the assured, in the absence of the giving of the required notice, unless the giving of it has been waived. It cannot be said that notice delayed nearly three months is immediate notice. Oakland Motor Co. v. American Fidelity Co., 190 Mich. 74, 155 N. W. 729." See, also, notes beginning on page 177 of 76 A. L. R., where decisions of nearly every state in the Union are cited, holding to the same view.

■ We therefore find that notice delayed for 44 days under the facts in this case was not immediate notice required by the policy, which was a condition precedent to liability on the part of the insurance company. It therefore follows that the insurer is not lia-

ble to the insured, Rowan, under the contract of insurance, and for the same reason the insurer of Rowan is not liable to plaintiff. a stranger to the contract. Act No. 55 of 1930.

We therefore find that the judgment of the lower court is incorrect and will have to be reversed in part.

It is ordered, adjudged, and decreed that the judgment of the lower court rejecting the demands of plaintiff against defendant Rowan be reversed, and there is now judgment in favor of Eugene Howard and against Richard S. Rowan in the full sum of $700.50, with interest at the rate of 5 per cent. per annum from judicial demand until paid, and all costs of court.

It is further ordered that the judgment in favor of the Maryland Casualty Company rejecting the demands of plaintiff Howard be affirmed.