**DUNCAN v. PEDARRE et al.**

No. 1520.

Court of Appeal of Louisiana. First Circuit.

Dec. 9, 1935.

For former opinion, see 161 So. 221.

Laycock & Moyse, of Baton Rouge, and Spearing & McClendon, of New Orleans, for appellants.

Fred G. Benton, D. J. Sanchez, and Dudley L. Weber, all of Baton Rouge, for appellee.

ELLIOTT, Judge.

The facts in this case have been stated in our original opinion, and to which reference may be had for the understanding of the same.

Speaking of the rut or ditch, across the detour road, into which the automobile was driven, in which the plaintiff was riding and which caused it to rebound resulting in injury to plaintiff's back, we said in our former opinion that it was about 12 or 15 inches wide and about 6 inches deep. The driver, Roumain, testifying as a witness for plaintiff, says he judged it was about 10 or 12 inches wide and about 6 inches deep. Our error in saying it was 12 or 15 inches wide is admitted, and correction is now made.

Plaintiff's brief on rehearing states that the testimony of Dr. Amedee Granger was

received in evidence and was not mentioned in our opinion. Plaintiff is mistaken in saying that it was received in evidence, but correct in saying that it was not mentioned. The record shows that the testimony of Dr. Granger was taken in New Orleans by commission in support of an X-ray which he caused to be made of plaintiff's back. The note of testimony shows that his testimony was offered in evidence by the plaintiff and objected to by the defendants, one of their objections being that the witness did not sign his deposition. The court ordered that it be returned to the notary public in order that the witness might sign it. The note of testimony indicates that it was done and signed, returned into court, and again offered in evidence, but was objected to again by the defendants on the ground that some of the cross-interrogatories propounded to Dr. Granger had not been answered. The court reserved its ruling, and it does not appear that any ruling was made on the objection. His testimony does not appear to have been received in evidence, and it was not mentioned on that account, but local physicians having testified as witnesses that they had examined the X-ray which he had caused to be made, without objection as to what it disclosed, we gave effect to the testimony in acting on the case.

The right of plaintiff to recover is the serious question to be decided. Our first conclusion is stated in our former opinion as follows: "According to Maggio, the rut was not a concealed or unknown danger which the driver of the automobile could not foresee and had no right to expect, but was an object ahead obvious to the view and plainly visible to the eye of one paying attention, and could and should have been seen by Roumain in time to have slowed down and avoided striking it." And in another place we said:

"It was broad daylight and the dirt detour, the temporary highway, full of dust, was in itself a warning to drive slow and keep a careful lookout ahead so as to be able to stop or slow down within the distance which an object in the road ahead could be seen in time to avoid it.

"It is our conclusion that there was such culpable fault, carelessness, and negligence on the part of Roumain in not seeing this rut or ditch and in driving into it at a speed which caused the automobile to rebound with such force as to injure the plaintiff, and to render the defendants liable to him in damages for the injuries sustained."

The plaintiff does not claim in his testimony that the automobile was driven negligently. He was asked on the trial of the case:

"Q. He (meaning Roumain) drove carefully? A. As far as I could see, yes."

In another place he said:

"Q. He was not driving wildly nor recklessly? A. Not to me."

Reconsideration and further study of the testimony has led us to the conclusion that the rut or ditch into which the automobile was driven was so nearly filled with dust that its real depth was not determinable by Roumain as he approached it. The rut or ditch was therefore not an obvious danger, nor one plainly to be seen by Roumain, but constituted a latent defect and danger in the road which was not fault nor carelessness nor negligence on his part not to see and guard against.

When Duncan, as guest, accepted Pedarre's invitation, as host, to ride with him in his automobile on the trip from Baton Rouge to Toledo, Ohio, and took the back seat assigned to him, he accepted all the ordinary dangers and risk which attended riding in the back seat on the trip in question. The detour they took was the highway for the purposes of the trip and a necessary part of the road over which they had to drive. For this purpose the guest shared with his host the ordinary risk and dangers which accompanied the traverse of the detour.

We are satisfied, after reconsideration and further study of the case, that there was no fault on the part of Pedarre and his driver in not appreciating the depth of this rut or ditch in the detour. It was so nearly filled with dust that it was barely noticeable to one approaching it driving an automobile. Its depth was not observable by a prudent driver; consequently the danger due thereto could not be realized until the wheels of the automobile had run into it. Just why it came to be there, the evidence does not explain. The soft dust in it let the wheels go down to a depth which it did not appear to have to an approaching observer.

In our first opinion we quoted from Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A. 1917F, 253, in which the situation

was like that which existed in the present case. The roadway was apparently, and believed to be safe, ahead; there was no reason to expect such a danger, and it was unseen and unknown until it was suddenly encountered, without opportunity to avoid it.

The rule of liability between host and guest in such a situation as stated in the Jacobs Case has become jurisprudence in this state. The language used is in harmony with the rule stated on the subject in Cyclopedia of Automobile Law by Huddy, vol. 5–6, subject, Guest and Passenger, § 131, pp. 221 and 222. We copy from this author as follows:

"As between the driver of a motor vehicle and an occupant thereof, the driver is not an insurer against latent defection in the road. To justify recovery by the occupant for injuries received, he must show negligence on the part of the driver in operating the car."

Applying this rule, Roumain, driving for Pedarre, was not negligent nor at fault in.operating the automobile; consequently the injury Duncan received was the result of a latent risk and danger assumed by him as guest when he entered on the trip, and for which the host is not liable.

As stated in our former opinion, the evidence does not indicate that the automobile, while in the detour, was driven faster than 20 or 25 miles an hour, nor that Roumain was not giving proper attention to the road. He says he was speaking to Maggio as the automobile approached the rut, but a man driving an automobile can speak to another sitting on the front seat at his side without neglecting the watch of the road ahead.

It is not necessary to discuss the case any further. We have come to the conclusion that our first opinion and decree herein was erroneous and that the judgment appealed from is erroneous and should be annulled, avoided, and set aside, and plaintiff's judgment rejected at his cost in both courts. We are placing our judgment on that ground, and would stop here were it not that we have also reached the conclusion that Pedarre did not give timely notice to his insurer of the injury which Duncan claimed to have received. Duncan exclaimed that his back was broken at the time of the rebound, and his injury appeared to be so serious that he was taken out of the automobile and laid on the grass by the side of the road, apparently suffering seriously with an injury thus received, and continued to complain of the same during the balance of the trip. We have become convinced that the delay of Pedarre in giving notice to his insurer served to discharge United States Fidelity & Guaranty Company from liability under the policy sued on. We are taking this opportunity to recall our former opinion on that subject; but our present judgment, that the plaintiff Duncan has no right to recover of the defendant Pedarre, will terminate the case against both defendants.

For these reasons our previous opinion and decree herein is now recalled and set aside. The judgment appealed from is now annulled, avoided, reversed, and the demand of the plaintiff, Thomas M. Duncan, against the defendant Roch H. Pedarre and United States Fidelity & Guaranty Company, is refused and rejected, at his cost in both courts.

DORE, Judge (dissenting).

For the reasons set out in our first decision, I respectfully dissent from the present opinion. The other members of the court seem to think that the rut in the road was a latent defect, and that there was, therefore, no negligence on the part of the driver. I cannot concur in this conclusion. The testimony of Mr. Maggio sitting in the front seat with the driver is not disputed that he saw the rut in time to stop the car or slow down if he had been driving. He assumed that Mr. Roumain, the driver, saw it and did not say anything. He also gave this evidence:

"About as near a description as I could possibly give is that the front wheels of the car hit the rut, the springs gave in, and you could hear the impact between the body and the axle. Roumain immediately stepped on the brakes. It all happened very quickly. Naturally the back wheels done the same thing; the back of the car hit the axle also." Ev. 27.

The car struck with sufficient force not only to cause the front and back of the body to strike the axle, but also with such force as to fracture the plaintiff's back. It is true Mr. Roumain, the driver, said that the rut was ten or twelve inches wide and about six inches deep and that there was considerable dust in the rut and he did not see it before the accident, but, on the other hand, he said he was talking

to Mr. Maggio about that time and that he guessed he would have seen it if he had been paying strict attention. There is really no evidence to offset what these two parties said, and as the case was first heard and decided by the late lamented Judge Favrot in favor of the plaintiff on this point, as well as on the other points in the case, and later the record was gone over by his honor, Judge Womack, and decided in favor of the plaintiff on this point, it doesn't appear there is any reason to conclude that this evidence would justify us in reaching any different opinion from what these presiding judges found or from that expressed in our first decision.

The question in this case which was argued and considered at more length was as to the sufficiency of the notice given the defendant insurance company. The facts as to that are that Pedarre, the insured, gave the company notice as soon as a demand was made on him. I adhere to what we said in our first decision that this was a reasonable notice under the circumstances of the case. The plaintiff, Mr. Duncan, did complain in the presence of the assured at the time of the accident that his back was broken, and he suffered pain on the trip to Toledo; but it is apparent that nobody considered his injury of serious nature at that time, or, for that matter, until he went to the Charity Hospital in New Orleans some months later and for the first time had an X-ray made showing the fracture of his back. Shortly after he came back from the Charity Hospital to Baton Rouge, knowing that he did have a broken back, he made a demand on the assured, and the assured immediately notified his insurer. I can't believe Mr. Duncan would have continued on the trip to Toledo, or that his host, Mr. Pedarre, would have allowed him to do that if he had had any idea as to the extent of Mr. Duncan's injury, or if he had known that it was of such a serious nature as might result in a claim by Mr. Duncan for personal injuries. Even the doctors in Baton Rouge, who treated Mr. Duncan upon his return to Baton Rouge, thought he was suffering from the pain in his back because of his work as a tailor and because of rheumatism, and as we said in our first opinion: "But certainly the plaintiff and Pedarre cannot reasonably be supposed to have had grounds for suspecting that his pain and growing incapacity was due to a fracture of the vertebra, when all of the physicians he con-

sulted were of the opinion that his trouble was due to a rheumatic condition, and had presumably advised him accordingly." Since our first decision in this case, the Supreme Court of the State granted a writ, and reversed the decision by the Court of Appeal for the Second Circuit in the case of Franklin A. Jones v. Shehee-Ford Wagon & Harness Co., 163 So. 129, 131, in which the Supreme Court said in part as follows:

"Under policy contracts similar to the one before us, the law does not require the insured to give notice to the insurance company of an accident unless the insured has reason to believe that the accident has caused or will cause loss covered by the policy. See Blashfield's Cyclopedia of Automobile Law, vol. 3, p. 2663, and the decisions cited. The condition in the policy itself, which we have quoted, requires notice to be given only 'of any accident causing loss covered hereby.' As soon as the insured, in this case, was informed that the accident had caused a loss covered by the policy, the insured gave notice to the insurer. That was a substantial if not literal compliance with the condition of the policy. The word 'immediate,' when used in such 'Conditions' in policies of insurance, does not mean 'instant.' It means within a reasonable time, or without unnecessary delay, and it admits of a reasonable excuse for some delay. Blashfield's Cyclopedia of Automobile Law (9th Ed.) vol. 33, p. 2662; Huddy's Cyclopedia of Automobile Law (9th Ed.) vol. 13–14, § 154, p. 186 et seq. The policy itself, in this case, so provides. Immediately following the clause which we have quoted, is this: 'Failure to give any notice required to be given by this policy within the time specified herein shall not invalidate any claim made by the Assured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.' In this instance the insured gave notice to the insurer immediately when the insured received notice that the accident was one 'causing loss covered' by the policy. If the insured was negligent in not finding out sooner that the accident had caused a loss covered by the policy, it was incumbent upon the insurer to plead and prove such negligence on the part of the insured. Our conclusion is that the insurer in this case did not prove a breach of the contract of insurance."

Under the principle so announced, I believe a reasonable, timely notice was given in this case. In this regard, it is important to note that the only disadvantage the defendant insurance company claims it suffered because of the delay in receiving the notice was the fact that the adjusters or investigators of the company were unable to locate the road in Tangipahoa parish where the accident was supposed to have happened, which was a detour road, after so long a lapse of time; but the insurance company failed to sustain its case on this score for the reason that apparently the company made no effort to examine the situs of the accident until many months after the notice was actually received by the company from the insured, Mr. Pedarre. So it would seem the company suffered no real disadvantage.

I also believe the doctrine of Edwards v. Fidelity & Casualty Co., 11 La.App. 176, 123 So. 162, decided by the Court of Appeal for the Parish of Orleans, is sound. In that case, unlike the present, without any reason to justify such action, the assured did not notify his insurer until some eleven months after the accident. The Court of Appeal for the Parish of Orleans held that the immediate notice clause did not apply to the injured person who has a direct cause of action under Act No. 253 of 1918, § 1, now amended by Act No. 55 of 1930, § 2. The court said that clause in the policy applies only to cases where the insured has paid a damage claim and seeks to be reimbursed by his insurer, where the insured has failed to give reasonable notice. It is true that the Court of Appeal for North Louisiana has held differently in the case of Howard v. Rowan et al., 154 So. 382; but as we said in our first opinion, the doctrine of the Edwards Case seems more reasonable, for if the injured person is cut off by failure of the insured to give a notice, or to give a reasonable notice, then the independent action which exists in favor of the injured person under Act No. 55 of 1930 would be wholly dependent on the will of another. The law does not require the registration of public liability policies and there's no way for the injured person to know if there is a policy, or where there is one, the name of the company, and nature of the policy. It would seem unreasonable to interpret Act No. 55 of 1930 to mean that the injured person has an independent, direct action against the insurance company, but that this action can be defeated by the failure of an immediate notice by the insured, where the injured person has no way whatever to see that such notice is given; and particularly where the policy provides only for the giving of notice by the insured, not by the injured party. Such is apparently not the intention of the lawmakers.

For these reasons, and for the reasons set out more in detail in our first decision, I respectfully dissent.