## STATE FARM MUT. AUTOMOBILE INS. CO. v. GRIMMER et al.

### No. 544.

District Court, W. D. Louisiana, Opelousas Division.

Oct. 15, 1942.

J. Elton Huckabay, of Baton Rouge, La., for plaintiff.

George Wesley Smith, of Monroe, and Debaillon, Bailey & Mouton, of Lafayette, La., for defendants Mr. and Mrs. Gordon Roark and others.

PORTERIE, District Judge.

The State Farm Mutual Automobile Insurance Company, an Illinois corporation, qualified to do, and doing the business of writing and entering into contracts of casualty insurance covering automobiles, sues and prays for a declaratory judgment wherein would be declared and determined the rights, liabilities, and legal relations between it and certain defendants, under a policy of automobile insur-

ance, in connection with an automobile accident causing death, as follows: On or about the 17th day of November, 1940, the car, "being operated with the permission and consent of Francis Grimmer, the assured," by William Nelson Grimmer, the brother of the assured, and with Miss Marie Roark, aged about 24, as a guest seated by the driver, at about 5:30 a. m., apparently struck a concrete culvert, on U. S. Highway No. 6, three miles north of Gonzales, parish of Ascension, state of Louisiana, and both Grimmer, the driver, and his sole companion, Miss Roark, were found dead in the car.

The first notice whatsoever to plaintiff company of this accident was the letter received from the assured, Grimmer, dated July 17, 1941, eight months later than the date of accident.

The plaintiff alleges that by the terms of its contract with the assured, Grimmer, it "undertook to defend any action brought against said Francis Grimmer, or any other person using and operating the automobile described in said policy with the consent and permission of the said Francis Grimmer, arising out of the operation of said automobile, hereinafter described, and also to pay any judgment that might be obtained against said Francis Grimmer, or any other person authorized to use said automobile, by reason of occurrency during the operation of said automobile."

The plaintiff further alleges "among other things, that upon the occurrence of an accident that written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as possible. Such notice shall contain particulars sufficient to identify the assured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the name and address of the injured and of any available witnesses."

Then, Article 11 of plaintiff's petition reads: "That said defendants, Mr. and Mrs. Gordon Roark, have notified and informed the plaintiff that they intend to hold the plaintiff liable for the satisfaction of any judgment, which they, or either of them, may obtain against legal representatives of William Nelson Grimmer, Francis Grimmer, or the plaintiff herein, under and by virtue of the statute in such case made and provided."

Next, Article 12 reads, as follows: "Plaintiff further avers that under Act 55 of 1930, Mr. and Mrs. Gordon Roark, defendants herein, have a right of direct action against the plaintiff herein, and that under said statute there is no requirement to bring in any other defendants."

We must quote the prayer of petitioner: "Wherefore, plaintiff prays judgment against said defendants, and each of them, that a declaration and determination be made herein by this Honorable Court, declaring and determining the rights, liabilities, duties, responsibilities and legal relations between the plaintiff on the one hand and the defendants on the other; and that it be declared and determined that this plaintiff is relieved of all liability under and by virtue of said policy to the defendants, or any of them, by the reason of the failure to give the notice as in said policy provided; and that it be further determined and declared that the said policy does not cover the liability of said William Nelson Grimmer, deceased, Francis Grimmer, or the Grimmer Coffee Company, a co-partnership formerly composed of Francis Grimmer and William Nelson Grimmer, to said Mr. and Mrs. Gordon Roark, and that said Mr. and Mrs. Gordon Roark have no lawful claim against this plaintiff by reason of said accident or occurrence for the reason that said policy stipulations have been breached by the failure of the defendants herein to give notice to the plaintiff of said accident within a reasonable time, or as soon as possible after the occurrence of said accident; and for such other further, different and general relief that the plaintiff may be entitled to."

Upon disposition of motion to dismiss filed by the defendants, the Court by a judgment in chambers said, in closing: "* * * so that the court must find either in favor of plaintiff, declaring it to be without liability for the accident under the policy, or reject the demand and hold that the failure to give the notice was justified. This is the sole ground upon which relief is sought."

First, we should quote from the policy: "III. Definition of 'Insured'

"The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared * * *."

"4. Notice of Accident—Claim or Suit—Coverages A and B.

"Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

Next, we must have before us the applicable language of Louisiana's direct action statute, Act No. 55 of 1930, amending and re-enacting the title and Section 1 of Act 253 of 1918:

"* * * Provided further that the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer company within the terms, and limits of the policy, in the parish where the accident or injury occurred, or in the parish where the assured has his domicile, and said action may be brought either against the insurer company alone or against both the assured and the insurer company, jointly and in solido.

"Provided that nothing contained in this act shall be construed to affect the provisions of the policy contract if the same are not in violation of the laws of this State.

"It being the intent of this act that any action brought hereunder shall be subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured; provided the term and conditions of such policy contract are not in violation of the laws of this State."

So, first, purely and simply, considering the provisions of the contract and all the facts which have yet to be elaborated by us, and applying the Louisiana law on the subject, is a notice by the assured eight months after the date of the accident "as soon as practicable"?

But, second, the defendants have taken the bold and advanced position that Miss Roark, the guest and injured party, under the direct-action statute, is not barred because of the failure on the part of the assured to do anything required by the insurance contract *after the occurrence of the accident;* their contention is that the eight-months delayed notice by the assured is no bar to the suit of Miss Roark through her legal representatives.

What is the law of Louisiana to be applied in this case? That's the perplexing question. For, as late as in 1934, the Supreme Court of Louisiana, in the case of Jones v. Shehee-Ford Wagon & Harness Co., Inc., et al., 183 La. 293, 163 So. 129, at page 132, said:

"This conclusion makes it unnecessary to consider the question whether a breach of a contract of public liability insurance, by a failure of the insured to give the insurer immediate notice of an accident, should defeat the right of action of the injured person, as well as the right of action of the insured, under the provisions of Act No. 55 of 1930."

Besides being relieved from much of the labor of research, we have been much impressed by, and the reasoning and conclusions of this opinion are much borrowed and taken from, articles of the Tulane Law Review appearing under "Bench and Bar" in Volume 10, at page 69, entitled: "Public Liability Insurance: The Injured Person's Right of Recovery when the Policy Holder fails to give Immediate Notice to the Insurer", and in Volume 15, at page 79, entitled: "Aspects of a Public Liability and Property Damage Policy in Louisiana", and appearing under "Comments", in Volume 11, at page 443, entitled: "Direct Rights of Action Against Public Liability Insurers."

The dominant case in our jurisprudence in which the holding is that the injured third party (exampled herein by Miss Roark) can have no greater or better right than the insured himself (the holder of the policy), or than the person insured under the omnibus clause (the driver in the instant case), is the case of Fenn v. Union Central Life Insurance Co., 1893, 48 La. Ann. 541, 19 So. 623. Quoting in part therefrom (19 So. at page 625), we find its general principles in the following language:

"The rights of a beneficiary in a policy of life insurance are *derivative,* and altogether dependent upon the terms and conditions of the contract. He can insist upon the integrity of the contract being preserved and maintained in statu quo, but he cannot claim the right to be placed upon

a better footing than the insured has placed himself. In the instant case the insurer and insured consented and agreed that the latter might give, and that the former would accept, time notes for the first annual premium, in installments, and that the default of the maker in paying either at its maturity should have the effect of resolving the contract and avoiding the policy. Of that option the insured availed himself, *and afterwards failed to pay the note first maturing*, and in that situation he died. On this state of facts, the policy became null and void, ipso facto, with regard to the insured and the beneficiary." (Italics supplied.)

In plain words, the logic is that a river cannot rise higher than its source. Miss Roark's rights are bound with and controlled by the terms of the original policy, and, particularly, as to the necessity of notice of an accident to the insuring company, to be given by the holder of the policy within a reasonable time; and that conclusion is drawn even after giving full effect and consideration to the omnibus clause in the policy and to the direct action statute.

The provisions in this policy of insurance whereby persons in the situation of Grimmer, the driver, and Miss Roark, the invited occupant of the car, become third-party beneficiaries, are called in the terminology of the Louisiana civil law stipulations pour autrui. On this phase of the case we feel that we can do no better than to quote a substantial portion of that part of the article in the Tulane Law Review, the author being Mr. William H. McClendon, Jr., of the New Orleans Bar. (10 T.L.R. at 75)

"Articles 1890 and 1902 of the Louisiana Civil Code provide for *stipulations pour autrui* (third party beneficiary contracts), and state that upon acceptance by the beneficiary the advantage becomes irrevocable. However the decisions have declined to give effect to this feature of irrevocability in those instances where the result would be contrary to principles of contract law and other articles of the Code. One of the earliest cases held that the person making a *stipulation pour autrui* was not estopped by Article 1902 from setting up his equities, and that his right to do so was 'determined by a recurrence to such general principles of law and justice as regulate the subject of contracts'. (Union Bank v. Bowman, 9 La.Ann. 195, 196 (1854))

"It was later held that the prohibition applies only to revocation without just cause (Brandon v. Hughes, 22 La.Ann. 360 (1867)) and Article 1893 of the Civil Code (An obligation without a cause, or with a false or unlawful cause, can have no effect. La. Civil Code of 1870) was cited to support the conclusion that a failure of consideration constitutes a just cause for abrogation of the contract and revocation of the advantage of the third party. In a later case (Janney v. Ober, 28 La.Ann. 281 (1873)) it was said that a promisor for the benefit of a third party may, when sued by such party, set up the same equities that he has against the promisee himself. In still another case the Court said 'the stipulation pour autrui must be kept alive' and 'if it loses vitality, the beneficiary cannot recover'. Lesseps v Fidelity Mutual Life Insurance Co., 120 La. 610, 618, 45 So. 522, 525 (1908)) In the Fenn case (Fenn v. Union Central Life Insurance Co., 48 La.Ann. 541, 19 So. 623 (1893)) the Court held that the rights of a beneficiary of a life policy were altogether dependent upon the terms and conditions of the policy, and that he could not be placed in a better position than the insured.

"Approaching the problem in the light of social considerations or of public morals, it is self-evident that a failure to restrict the rights of the injured person to the terms and conditions of the policy would expose the insurer to liability not only transcending the scope of the contract but resulting from the chicanery, fraud, or plain carelessness of irresponsible persons. One of the most frequently encountered deviations from strict homely honesty is passivity—best illustrated by the passenger who permits the railroad conductor to overlook him."

It is our duty to cite and analyze the Louisiana cases in point. They are not numerous because, firstly, there is no statute in Louisiana compelling any and all automobile owners to have liability protection contracts; and secondly, because relatively very few holders of such protection policies fail to give immediate or reasonably prompt notice of accidents.

The only case in Louisiana which directly supports the contention of the defendants is the case of Edwards v. Fidelity & Casualty Co. of New York, 1929, 11 La. App. 176, 123 So. 162, but its weakness of being alone is much offset by its well-

expressed and strong reasoning, supported by practical illustrations. Its holding has the support of only four other United States jurisdictions, those of Maryland, Kentucky, Washington, and South Carolina. The particular language of the Edwards case which permits the injured party to have a cause of action when the assured would not, under the terms of the policy-contract, is found in the following quotation from it: (123 So. at page 163)

"But, argues defendant, the statute itself provides that such action as the injured party may maintain shall be 'within the terms and limits of the policy,' and since the policy requires notice, and since no notice was given in this case, this action is not brought within the terms and limits of the policy. We think that the words 'terms and limits of the policy' were not intended to include the requirement of notice, but referred only to the amount which might be recovered and to those other warranties and conditions with which it was within the power of plaintiff to comply. As was said in Rokes v. Amazon Insurance Co., 51 Md. 512, 34 Am.Rep. 323:

" 'In regard to the clause in the policy that provides "no waiver or modification of any of the terms or conditions of this policy shall be made in any event," it is sufficient to say that it refers to those conditions and provisions of the policy, which enter into and form a part of the contract of insurance, and are essential to make it a binding contract between the parties, and which are properly designated conditions; *—and that it has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing proofs of loss.'* "

But, should we espouse that reasoning, then the condition that the insuring company should be apprised of an accident is taken out of the contract entirely. The only limitation of time to the suit in an automobile accident case would be that fixed by the statutes of repose. In Louisiana the period of suit for an action sounding in tort is one year from the date of the injury to person or damage to property; but we ask ourselves in the case of an action by an injured party with the legal status of Miss Roark in the instant case, whether or not the period of prescription would be ten years.

In analyzing the merits of this case we have borne in mind that in the case of Hardtner v. Aetna Casualty & Surety Co., La.App., 189 So. 365, because of the rarely-occurring and peculiar facts of that case (the policy holder, riding in his own automobile with a selected chauffeur, became "an other" person under the omnibus clause of that policy), the court said, at page 373 of 189 So.:

"The 'omnibus' or 'additional insurance clause' does not merely afford additional protection to the owner of the car but clearly, under its express terms, extends the insurance to cover any other person who might be operating the car with the owner's consent."

And said again, at page 376 of 189 So.: "The sole purpose of the contract is to indemnify all persons who fall within its provisions and are not specifically excepted therein."

But the case has no significance to our problem—we have to deal with a delayed notice in this case of eight months, which is practically the equivalent of no notice at all, because the advantage to the insuring company of an immediate or reasonably early notice is, in the words of the Divisional Claims Manager of the plaintiff company, well stated, as follows:

"The investigator immediately goes to the scene of the accident and preserves proof of the physical facts indicative of the manner in which the accident happened or its cause. He orders photographs to be taken of such evidence, he calls the facts to the attention of disinterested witnesses in order to have their testimony in case of suit. He scours the neighborhood in search of eye-witnesses or near eye-witnesses to the accident. He interviews and takes statements from anyone he can find who knows anything about the accident. He finds out where the parties had been, where they were going, and what their relationship and conduct was when last seen. He takes negative statements from those who might have been but were not in fact witnesses. He exhausts every lead for witnesses. He establishes and negates facts so that the truth will be provable in court and 'false testimony rebutted. Having in such a manner gathered the information he will report the same to me, together with his opinion as to whether or not liability rests with our insured."

"The sooner an investigator gets on a claim the more nearly complete he can make his investigation. There is a direct ratio

between speed in getting to the scene of an accident and the comprehensive scope of the investigation. * * * Delayed notice makes it practically impossible to uncover or find witnesses, preserve evidence of physical facts, and negate possible false assertions. The impossibility of making a complete investigation leaves us in a position whereby there is nothing upon which to base an opinion as to whether or not we should settle or resist the claim. We have no opportunity to become possessed of all the facts and cannot prepare to meet unjustifiable and fictitious claims."

The casualty rates in protection-from-liability policies are fixed lower because of this provision of immediate or reasonably prompt notice of the accident to the insuring company. This condition in the contract has very practical reasons back of it. To the insuring company it is a serious and influencing phase of the contract; to the assured it is not a heavy burden; in fact, the requirement is practical. It may not be set aside frivolously.

We should now list the various Louisiana cases where this particular point of notice arose, in their chronological order, and summarize, free of much detail, the reasons for the respective rulings.

In the case of Bougon v. Volunteers of America, La.App. Orleans, 1934, 151 So. 797, the doctrine as put out in the Edwards case (same circuit) was reiterated by analogy—not on the point of want of or delayed notice but on the point that the direct action statute permits the injured person to sue the insurance company directly and singly, even though "there is a clause forbidding any action against the insurance company by any person until 'the amount of loss shall have been fixed either by a final judgment against the assured by the court of last resort, after trial of the issue, or by agreement between the parties with the written consent of the company.'" (151 So. at page 800), and though there be found in the direct action statute (Act 55 of 1930) the following paragraph: "Subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured."

The author of this opinion by the Orleans Circuit, Judge Westerfield, was the author of the Edwards case in the year 1929, and his faith in the holding of the Edwards case is unwavering, for he says: (151 So. at page 802)

"Just a word about the Edwards case, which, we are informed, has met with considerable criticism, as distinguished an' authority as the Supreme Court of California having declared that it is clearly against the great weight of authority. Hynding v. Home Acc. Ins. Co., 214 Cal. 743, 7 P.2d 999, 85 A.L.R. 13. We realize that the current of judicial authority is usually right, and therefore that we are probably wrong, but, if so, the mists of misunderstanding have not cleared, and we are still enveloped in the Plutonian darkness of error, for we arise from a reconsideration of that case with a new and more abiding faith in its correctness."

In the case of Howard v. Rowan, La. App., 2 Cir., 1934, 154 So. 382, 383, the court said: (154 So. at page 384) "We therefore find that notice delayed for 44 days under the facts in this case was not immediate notice required by the policy, which was a condition precedent to liability on the part of the insurance company. It therefore follows that the insurer is not liable to the insured, Rowan, under the contract of insurance, and for the same reason the insurer of Rowan is not liable to plaintiff, a stranger to the contract. Act No. 55 of 1930."

In the case of Jones v. Shehee-Ford Wagon & Harness Co., 1935, 183 La. 293, 163 So. 129, a delay of twenty-six days was interpreted as being a substantial compliance with the provision of a notice as soon as practicable. The reasoning by the court is that though the insured had an immediate knowledge of the accident, it is only later that he knew that the "accident had caused a loss covered by the policy", at which time he gave immediate notice. We should remember that it is in this case that the Supreme Court of Louisiana, through its Chief Justice, inserted the paragraph of disclaimer, fully quoted hereinbefore.

In the case of Duncan v. Pedarre, La. App., 1 Cir., 1935, 164 So. 498, a delayed notice of eight months disengaged the insuring company from its liability contract. There had been a previous ruling by the court in the same case, Id., 161 So. 221, to the contrary, for in the later case the court says: [164 So. 500]

"We have come to the conclusion that our first opinion and decree herein was erroneous and that the judgment appealed from is erroneous and should be annulled, avoided, and set aside, and plaintiff's judg-

ment rejected at his cost in both courts. We are placing our judgment on that ground, and would stop here were it not that we have also reached the conclusion that Pedarre did not give timely notice to his insurer of the injury which Duncan claimed to have received. Duncan exclaimed that his back was broken at the time of the rebound, and his injury appeared to be so serious that he was taken out of the automobile and laid on the grass by the side of the road, apparently suffering seriously with an injury thus received, and continued to complain of the same during the balance of the trip. We have become convinced that the delay of Pedarre in giving notice to his insurer served to discharge United States Fidelity & Guaranty Company from liability under the policy sued on."

Judge Dore dissents in the case, expressing a preference for the doctrine of the Edwards case, though he recognizes that the Second Circuit, in the case of Howard v. Rowan, supra, has differed from the Edwards case doctrine. We believe that he condenses the points very well in the following language: (164 So. at page 502) "* * * but as we said in our first opinion, the doctrine of the Edwards case seems more reasonable, for if the injured person is cut off by failure of the insured to give a notice, or to give a reasonable notice, then the independent action which exists in favor of the injured person under Act No. 55 of 1930 would be wholly dependent on the will of another. The law does not require the registration of public liability policies and there's no way for the injured person to know if there is a policy, or where there is one, the name of the company, and nature of the policy. It would seem unreasonable to interpret Act No. 55 of 1930 to mean that the injured person has an independent, direct action against the insurance company, but that this action can be defeated by the failure of an immediate notice by the insured, where the injured person has no way whatever to see that such notice is given; and particularly where the policy provides only for the giving of notice by the insured, not by the injured party. Such is apparently not the intention of the lawmakers."

We believe that the Legislature of Louisiana, by Act No. 371 of 1940, being an Act "To provide that the casualty and surety rating commission shall furnish to the attorney or attorneys, claimant or claimants, whether under compensation benefits or personal liability, information as to the name of the insurers of employers, or the insurers of persons carrying personal liability insurance at any reasonable time; providing further that the said Casualty and Surety Rating Commission shall furnish to any attorney representing a claimant under either compensation or personal injury claim the amount of the policy and the provisions of coverage; * * *", has removed all of the objections of Judge Dore expressed in his dissent; and the provisions of this Act also largely do away with all of the grounds given for the holding in the Edwards case.

■ Incidentally, our case falls under Act No. 371 of 1940, as it was approved on July 20, 1940, by the Governor; the date of the policy contract at issue herein is July 22, 1940, and the date of accident November 17, 1940. Nevertheless, we should come to the same holding, even if Act 371 of 1940 had never been enacted.

In the case of Jones v. American Mut. Liability Ins. Co., La.App. Orleans, 1939, 185 So. 509, 515, with Judge Westerfield again as the organ of the court, a delay of twenty-five days in the giving of notice of an accident was held to be a substantial compliance with the provision of an automobile liability policy requiring notice "as soon as practicable", and thus did not preclude a third party from bringing suit against the company.

The author of the opinion repeats, verbatim, the paragraph previously quoted by us when treating of the Bougon v. Volunteers of America case and the Edwards case. But the decision does not ratify the radical departure that is expressed in the Edwards case; the decision grooves with the Supreme Court ruling in the Jones v. Shehee-Ford case, where, with the particular paragraph of disclaimer of ruling, now twice noted, a delay of twenty-six days was permitted.

This fact is the more apparent when the concurring opinion by Judge Janvier, joined in by Judge McCaleb, is read, and in particular this paragraph: (185 So. at page 517)

"I also concur in the decree against the insurer because I feel that reasonable notice was given to the insurer. See Jones v.

Shehee Ford Wagon & Harness Co., La. App., 157 So. 309, affirmed by Supreme Court on writs in 183 La. 293, 163 So. 129.

"I cannot agree, however, that because of what we said in Edwards v. Fidelity & Casualty Co., 11 La.App. 176, 123 So. 162, no notice of the accident need be given an insurer. * * * "

Finally, we have the case of Bullock v. Fidelity & Casualty Co. of New York, La.App. 2 Cir., 1938, 187 So. 93, 99, in which a delay of notice to the insuring company of eleven months was excused because of the peculiar facts in the case. The Circuit Court summarized the principles of the ruling in the following language: "With these authorities as a basis, we conclude, as did the trial judge, that Wilbur 'was not required to give his insurer notice, being in good faith, ignorant of the injury and having used reasonable diligence in concluding that no claim would result from the accident.'"

The fundamental principle underlying this case is taken from 14 R.C.L. 1330, 1331, in the following language: "The requirement of a liability policy that notice shall be given on the occurrence of an accident does not require notice of an accident where no bodily injury is apparent and there is no reasonable ground for believing that a claim for damages will be made, and the duty to give notice does not arise until the subsequent facts would suggest to a reasonably prudent person that a liability might arise."

It is obvious that the above principle has nothing to do with the instant case because the insured, owner of the policy, Francis Grimmer, had to immediately know of the destruction of his automobile and it is conceded that he knew of the death of his brother immediately after the accident.

So, the answer to our question is: the Supreme Court of Louisiana has nothing on the point and has specifically denied having ruled on the point, even inferentially or persuasively; of the three appellate courts of the state, two, the First and Second, have said that even with the effect of the direct action statute, if provision of reasonable notice by the insured is a part of the original contract, that condition affects and controls the rights of the injured party, even though the injured party be "an other person" under the omnibus clause; and the Orleans Circuit, in the case of Jones v. American Mut. Liability Ins. Co., supra, because of the special concurrence by Judges Janvier and McCaleb in disavowal of the Edwards doctrine, has not aligned itself. So, the law of Louisiana on the point is represented by the utterances of the First and Second Circuits.

We have given much thought and consideration to the contention of the defendants. Their position is, because of the direct action statute and the omnibus clause of the contract, that Miss Roark is an "insured"; that she becomes substituted to the original policy holder; then it follows that she could give no notice, being dead, and that no notice is to be expected of her until, by the law, her legal representatives are created to give notice to and to make demand on the insuring company. This legal fiction has no support even because of business necessity or expediency.

The same analogy is developed by the defendants in favor of Grimmer, the driver of the car; he becoming a substitute original contracting party, and the "insured", etc.

We cannot follow this argument because the contract in favor of the driver of the car, Grimmer, or the injured party, Miss Roark, is a derivative one. In the instant case, after all, the first and only notice was the one given through the letter of the assured, the owner of the car, eight months after the date of the accident, and no reason whatsoever is offered to excuse the delay.

Accordingly, we must declare and determine that the plaintiff, State Farm Mutual Automobile Insurance Company, be and is relieved of all liability under and by virtue of its contract of casualty insurance under the policy to the defendants, or any of them, by reason of the failure to give the notice as in said policy is provided; and

We further declare and determine that the said policy does not cover a liability of William Nelson Grimmer, the deceased driver of the car, of Francis Grimmer, the insured, or the Grimmer Coffee Company, a co-partnership formerly composed of Francis Grimmer and William Nelson Grimmer, to Mr. and Mrs. Gordon Roark, the father and mother and the legal representatives of Miss Roark; and

We also further declare and determine that Mr. and Mrs. Gordon Roark have no lawful claim against plaintiff, the insuring company, by reason of this accident or occurrence, because the policy stipulations

have been breached by the failure of the defendants to give notice to the plaintiff insuring company of the accident "as soon as practicable", or as soon as reasonably possible after the occurrence.

A judgment of this nature and substance will be signed by the Court upon due presentation.