Plaintiff, while walking on a sidewalk in the night time in the southern portion of the Town of Olla, Louisiana, was run into from behind and injured by a motor bicycle driven by defendant's son, Selby Odom Brockner, aged thirteen years, and he sues the father to recover damages on account of pain, shock and suffering; permanent disability allegedly resulting from the accident and for medical expenses incurred in treating him therefor. The carelessness and negligence of the son, as the specific cause of the accident, are alleged upon. Exceptions of no cause and no right of action were filed and overruled. No complaint is here registered because of the ruling. We assume that the exceptions have been abandoned.
Answering, defendant avers that plaintiff was struck when he suddenly and without warning stepped from the sidewalk into the path of the bicycle, which, it is averred, was at the time traveling on the ground parallel to the walk. Plaintiff's own negligence in this respect is pleaded in bar of his demand. Defendant specifically denies that plaintiff was seriously or permanently injured; and further denies that when injured and for some time prior thereto, he had any income whatever or earning capacity, but, on the contrary, was a "public charge and regularly receiving relief from the State and Federal Governments."
From a judgment for plaintiff in the sum of $950 defendant appealed devolutively. Answering the appeal, plaintiff urges that the judgment be increased to $1,750.
It is obvious from briefs submitted in this court that the quantum of damages to which plaintiff is entitled is the sole remaining controverted question. That defendant's son was grossly negligent in the operation of the bicycle at the time and place of the accident, and ran into plaintiff from behind without warning or notice of his presence, is not now seriously denied. The testimony abundantly supports plaintiff's allegations bearing on these questions.
Appellant submits in brief that a judgment for $500 would adequately compensate appellee for the pain, suffering and shock experienced by him from the accident.
Plaintiff and a friend were leisurely walking abreast southerly on the sidewalk and defendant's son was going in the same direction. The Parish Fair was then in progress and all the parties had visited there that evening, and were returning to their respective homes in Olla. A paved highway parallels the walk. Traffic thereon, moving in each direction, was, at the time, heavy. The noise of such traffic most probably prevented plaintiff and his friend from hearing the noise of the approaching motor bicycle, and the blending of its light with those of the moving automobiles on the highway doubtless neutralized its independent illuminating power to the extent that it did not provide notice of the bicycle's proximity.
Defendant's son, as he left the Fairgrounds, picked up a boy friend who rode astride the fuel tank in front of him. The bicycle was being driven, according to this boy, over thirty miles per hour, while defendant's son says the speed was not in excess of twenty miles. Evidently the speed was rapid as plaintiff was knocked forward approximately twenty-five feet (25') and landed on his right shoulder six (6') or eight (8') feet from the right side of the walk, temporarily unconscious. The front wheel having passed between his legs, probably accounts for the injuries not being more serious.
After the passing of a few minutes, plaintiff regained consciousness and walked unassisted to his home one-fourth of a mile distant, and promptly summoned Dr. J.A. Gaharan, a local physician. In the meantime, defendant had learned of the accident and went to plaintiff's home. Dr. Gaharan diagnosed a fracture of the surgical neck of the right humerus and thought probably there was injury to some of the ribs at or near their connection with the spine. He also found minor flesh wounds on the calf of each leg. He administered sedatives and advised hospitalization.
Plaintiff was immediately driven by defendant to the Charity Hospital in Pineville, Louisiana, arriving there about one o'clock A.M. X-ray pictures were made and these confirmed Dr. Gaharan's diagnosis as to the fracture. The hospital report states that "fragments were in very good alignment for this type of fracture." By way of explanation it is well to add that the surgical neck referred to is that part of the humerus connecting the ball at the upper end with the humerus bone proper. The fracture is described as being a comminuted *Page 722 
one. The hospital physicians immobilized the upper arm and shoulder joint by application of bandages and released plaintiff within twelve hours after his entrance therein, with instructions that he return within ten days. He did so and was re-examined. It was then found, as appears from admission in the record: "* * * that the fragments were in good alignment and that on this occasion the patient was advised to take certain exercise and to put his arm in a sling and to return in two weeks. It is further stipulated that the patient did not return as he was advised."
The bandages were removed and splints were applied.
Plaintiff did not return to the hospital after the second visit, but decided to place his case entirely in the hands of Dr. Gaharan, who had been observing him since the accident. Soon thereafter Dr. Gaharan removed the splints and replaced them with others, and this was repeated from time to time over a period of six weeks and then finally removed.
Plaintiff's contention is that his right arm, due to stiffness in the shoulder joint, cannot be raised above a horizontal position, and, for this reason, his ability to perform manual labor, especially rough carpentry work, has been totally destroyed. The lower court either did not agree with this contention or else reached the conclusion that plaintiff had little or no wage earning ability to impair at the time of the accident, in view of the amount of damages awarded.
Plaintiff testified that his shoulder joint pained him occasionally and when he attempted to carry any weighty object in his right hand the joint would "pop" and pain therein would be intensified. He is positive that he cannot raise the arm above a horizontal position.
Dr. Gaharan testified that impairment of flexion of the arm, as contended by plaintiff, could easily be the result of a trauma such as he experienced. He admits that plaintiff could be malingering to some extent; that the symptoms being subjective the word of plaintiff is given weight.
Several of plaintiff's neighbors testified that after the splints were finally removed they observed no difference in his daily habits and activities from those prior to the accident. Some of them observed him carrying twenty-four pound sacks of flour and fairly good sized boxes on his right shoulder, which were kept in place by the uplifted right arm and hand. Some saw him sharpening large saws, carrying buckets of water in the right hand, wringing out and hanging freshly washed clothes on a line his height above the ground, while one or two neighbors are certain that they observed him carrying timbers and using a saw to convert them into a building.
No good reason appears, nor is any suggested, why these neighbors should come into court and swear falsely against plaintiff with whom, so far as the record discloses, they are friendly. Usually friendly neighbors are prone to be of assistance, rather than a hindrance in such cases. We are impelled to accept the testimony of these witnesses as being true; and, if true, certainly plaintiff has suffered very little, if any, material impairment of the use of his right hand since removal of the splints. Such impairment, if any, will doubtless disappear with proper use and reasonable exercise.
Plaintiff has suffered from high blood pressure for several years. Because of this ailment Dr. Gaharan advised him not to work in hot weather. On this subject, the Doctor testified:
"Q. Then except for hot weather and except of this particular occasion when he got hurt, if it hadn't been for this injury, would it have been possible or would it have not, for Mr. Buckalew to do a reasonable amount of manual labor? A. It would have been alright for him to have done a very reasonable amount of manual labor but not in hot weather."
At time of accident and for several months prior plaintiff had done no gainful work. For the same period he was given $12.75 per month by the Relief organization. He testified as follows:
"Q. Tell us why you were put on Relief. A. Because I wasn't able to earn a living and I got some help from the Relief."
Because of the foregoing admitted facts, it seems clear that plaintiff lost nothing in a financial way during the period his wound was healing, some two months. The proof submitted by him in support of the asserted loss during this time, is wholly insufficient to warrant a finding in his favor.
Therefore, plaintiff's right to damages is confined to the asserted pain, *Page 723 
shock and suffering. No doubt he did suffer considerable shock and concussion sufficient to produce a brief period of unconsciousness. For two weeks the pain was more or less serious, and for this period and for a few weeks thereafter he suffered considerable discomfort. The immobilization of the shoulder, wearing and removing splints, rubbing with lotion the locus of the injury, etc., naturally proved uncomfortable and doubtless caused some pain.
We are of the opinion that the award of damages by the lower court is out of line with awards in cases of like or similar character decided by courts of this state and for this reason should be reduced to Six Hundred ($600) Dollars. The following cases support this conclusion: Johnson v. Louisiana Ry. Nav. Co., 151 La. 1075, 92 So. 704; Howard v. Rowan, et al., La.App., 154 So. 382; Blahut v. McCahil, et al., La.App., 163 So. 195; Cyrus v. Tung, 16 La.App. 549, 134 So. 782; Greer v. Hamilton 3 La.App. 120.
Plaintiff owes Dr. Gaharan Fifty ($50) Dollars for services rendered him. He is entitled to recover this amount in addition to the above named damages award.
For the reasons herein assigned, the judgment appealed from is amended by reducing the principal amount thereof to Six Hundred Fifty ($650) Dollars, and as thus amended, it is affirmed with costs, save those incurred by the appeal, for which plaintiff is cast. *Page 923