46 So.2d 122 (1950)
217 La. 189
WEST et ux.
v.
MONROE BAKERY, Inc., et al.
No. 39316.
Supreme Court of Louisiana.
March 20, 1950.
Rehearing Denied April 24, 1950.
*123 Thompson, Thompson & Sparks, Monroe, for applicants.
Theus, Grisham, Davis & Leigh, Monroe, for respondent.
MOISE, Justice.
We granted writs from a judgment of a divided Court of Appeal, Second Circuit, where an insurance company has been made by an act of the Legislature an obligor in solido to a third person who has been injured through the negligence of the insurance company's assured. The district court rendered judgment in solido against the Monroe Bakery Company, Inc., and the General Casualty Company of America for the sum of $5,000.00, with interest from judicial demand. The assured bakery company acquiesced in the allegation of negligence on which judgment was founded by not taking an appeal.
An analysis of our jurisprudence considered by the Appellate Court in reaching its conclusion discloses that with two exceptions Act 55 of 1930 has been treated consistently as conferring substantive rights on third parties to contracts of public liability insurance, which become vested at the moment of the accident in which they are injured, subject only to such defenses as the tort-feasor himself may legally interpose. The facts in each case may be different, but save for Howard v. Rowan, La.App., 154 So. 382, and State Farm Mutual Automobile Insurance Company v. Grimmer, D.C., 47 F.Supp. 458, the result has been the samethe upholding of the statutorily granted right against the insurer regardless of a stipulation to the contrary between the insurer and the insured in the policy contract and regardless of dilatory conduct on the insured's part in giving notice.
Bougon v. Volunteers of America, La. App.1934, 151 So. 797, involved an action brought against the employer of the tortfeasor and its liability insurance carrier. The insurance policy which had been issued contained a clause forbidding any action against the carrier by anyone until "`the amount of loss shall have been fixed either by a final judgment against the assured by the court of last resort, after trial of the issue, or by agreement between the parties with the written consent *124 of the company.'" 151 So. 797, at page 800.
The insurer contended that the direct right of action given to a third person under Act 55 of 1930 was limited to those cases in which the policy did not prohibit such actions. In rejecting this defense, the Court said, 151 So. at page 802:
"Considering both acts together, the act of 1918 and the act of 1930, it seems to us too plain for argument that it represents a determination upon the part of the Legislature to extend the rights of an injured party as against the insurer. In the beginning, an action could only be maintained in the event of the insolvency of the insured. Later this right of action was facilitated by a definition of insolvency and a conditional right of action conferred unrelated to the insolvency of the insured and capable of being exercised initially as against the insurer alone, or in conjunction with the insured as a solidary obligation.

* * * * * *
"Much has been said during the oral argument of this case concerning the hardship to the insurer which the interpretation of the statute we have adopted would involve. If there be any injustice to the insurer as a result of this statute, the obvious relief is through legislative action. * * *"
While delayed notice was not the special issue presented in the Bougon case, the general issue was identical with the one in this casewhether the right of action conferred on an injured third person by Act 55 of 1930 vests immediately or whether it is contingent on and subordinate to any stipulation between the insurer and the insured, contained in the policy contract. As a matter of fact, the policy clause upon which the insurer in the Bougon case attempted to rely is practically verbatim with the clause contained in the General Casualty Company contract entitled "5. Action Against Company", above quoted.
In Duncan v. Pedare, La.App.1935, 161 So. 221, suit was brought against an automobile owner and his insurer by a third person invitee, who, had been injured when the automobile (then being operated by another invitee) struck a deep rut. The insurer first received formal notice of the accident 8 months and 7 days after its occurrence; and it claimed that delay in giving notice released it from liability, there having been a policy stipulation which provided: "`Immediate written notice of any accident with the fullest information obtainable at the time must be forwarded to the home office of the company or its authorized representative. If a claim is made on account of such accident the assured shall give like notice thereof, and if suit is brought to enforce such a claim the assured shall immediately forward to the company every summons or other process as soon as same shall be served on him.'" Quoted in 161 So. 221, 227.
The Court refused to permit the insurer to avail itself of that defense, saying: "* * * the act (Act 55 of 1930) * * * does not impose on the injured party the duty to give the statutory notice of the accident which causes him injury. This duty under the policy and the statute which recognizes the policy contract is imposed on the assured only." 161 So. 221, at page 228.
On rehearing of that case, Duncan v. Pedarre, La.App.1935, 164 So. 498, the Court of Appeal for the First Circuit reversed itself as to its prior finding of negligence on the part of the operator, and having found there was none, it naturally rejected the suit as to both defendants. It did say, what was obiter to the decision, that the owner's failure to notify the insurer released the latter from liability under the policy. The dissenting opinion adhered to the initial decision, and we quote therefrom a comment on the purpose of Act 55 of 1930 which summarizes the trend toward a liberal interpretation of remedial legislation, 164 So. 498, 501, 502:
"The question in this case which was argued and considered at more length was as to the sufficiency of the notice given the defendant insurance company. The facts as to that are that Pedarre, the insured, gave the company notice as soon as a demand was made on him. I adhere to what we said in our first decision that this was *125 a reasonable notice under the circumstances of the case. * * *
"I also believe the doctrine of Edwards v. Fidelity & Casualty Co., 11 La.App. 176, 123 So. 162, decided by the Court of Appeal for the Parish of Orleans, is sound. In that case, unlike the present, without any reason to justify such action, the assured did not notify his insurer until some eleven months after the accident. The Court of Appeal for the Parish of Orleans held that the immediate notice clause did not apply to the injured person who has a direct cause of action under Act No. 253 of 1918, § 1, now amended by Act No. 55 of 1930, § 2. The court said that clause in the policy applies only to cases where the insured has paid a damage claim and seeks to be reimbursed by his insurer, where the insured has failed to give reasonable notice. It is true that the Court of Appeal for North Louisiana has held differently in the case of Howard v. Rowan et al., [La.App.], 154 So. 382; but as we said in our first opinion, the doctrine of the Edwards case seems more reasonable, for if the injured person is cut off by failure of the insured to give a notice, or to give a reasonable notice, then the independent action which exists in favor of the injured person under Act No. 55 of 1930 would be wholly dependent on the will of another. The law does not require the registration of public liability policies and there's no way for the injured person to know if there is a policy, or where there is one, the name of the company, and nature of the policy. It would seem unreasonable to interpret Act No. 55 of 1930 to mean that the injured person has an independent, direct action against the insurance company, but that this action can be defeated by the failure of an immediate notice by the insured, where the injured person has no way whatever to see that such notice is given; and particularly where the policy provides only for the giving of notice by the insured, not by the injured party. Such is apparently not the intention of the lawmakers."
We now come to the case of Edwards v. Fidelity & Casualty Co., 11 La.App. 176, 123 So. 162. There the injured third party secured a judgment against the tort-feasor and, the execution thereon having been returned "nulla bona", brought suit directly against the insurer of the tort-feasor, under Act 253 of 1918 (which was amended and re-enacted by Act 55 of 1930, a year after the Edwards decision.) One of the defenses urged by the insurer was a delay of 11 months in receiving notice of the accident. The policy also contained a provision that the assured "`agreed and bound himself to give immediate written notice of any accident which might occur within the terms and conditions of said policy, at the same time giving to respondent the "fullest information obtainable at the time" of all the details and circumstances of the accident.'" Quoted in 11 La. App. 176, 177; 123 So. 162, 163.
It further provided, 11 La.App. 177, 123 So. 162:"`The company shall not be liable to pay any loss nor shall any action be brought against the company to recover under this policy until a final judgment shall have been recovered against the assured in a suit covered hereby. If an execution on a judgment recovered in a suit against the assured covered by this policy is returned unsatisfied, the judgment creditor shall have a right of action to recover the amount of such judgment against the company to the same extent that the assured would have had to recover against the company had the assured paid the said judgment; but in no event shall the company's liability exceed the limits expressed in this policy. * * *'"
As to the contention that the injured party had lost his right as a result of the assured's neglect to comply with one of the covenants entered into with his insurer, viz., "immediate written notice", the Court said 11 La.App. 177, 123 So. 163 ff.:
"If the failure of Monahan to give the insurer notice of the accident operates to deprive plaintiff of such rights, as, under the statute and under the policy, he would otherwise have had, then the right, which the statute creates and which the policy recognizes, is of doubtful value because the existence of that right in one person depends upon the actions of another. (Italics mine.)
*126 "It is quite evident that, except in very rare cases, the party injured by the negligence of another has no knowledge as to whether or not that other is insured, and if he has ordinarily no knowledge as to whether there is any insurance at all, then, clearly, he has no knowledge as to who the insurer may be if there is one. It is therefore not within his power to give the notice required by the policy, and, if notice is essential to his recovery, his right must, as we have stated, depend upon the other party. We do not think that such was the intention of the legislators.
"It is quite true that Monahan's failure to give notice to his insurer would have prevented his recovery from the insurer, had he himself paid the judgment * * * but that is because Monahan had so contracted. As between parties to a contract, the contract itself is the law of the case. Here, however, the law of the case is not found solely within the four corners of the policy of insurance, but is contained primarily in the statute to which we have referred.
"We think that it was the purpose of the statute to create, immedately upon the happening of the accident, a cause of action in the injured party against the insurer, if any, of the party at fault. Of course, the right to present and enforce this cause of action is conditioned upon the obtaining of a judgment against the party at fault and upon unsuccessful efforts to collect that judgment, but these are conditions with which it is within the power of the injured party to comply. If he cannot comply with them he has only himself to blame.
"But, argues defendant, the statute itself provides that such action as the injured party may maintain shall be `within the terms and limits of the policy,' and since the policy requires notice, and since no notice was given in this case, this action is not brought within the terms and limits of the policy. We think that the words `terms and limits of the policy' were not intended to include the requirement of notice, but referred only to the amount which might be recovered and to those other warranties and conditions with which it was within the power of plaintiff to comply. As was said in Rokes v. Amazon Insurance Co., 51 Md. 512, 34 Am.Rep. 323: (Italics mine.)
"`In regard to the clause in the policy that provides "no waiver or modification of any of the terms or conditions of this policy shall be made in any event," it is sufficient to say that it refers to those conditions and provisions of the policy, which enter into and form a part of the contract of insurance, and are essential to make it a binding contract between the parties, and which are properly designated conditions;and that it has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing proofs of loss.' (Italics by the Court.)
"We are told that it works a hardship on the insurer to be called on to defend an action of this kind, as he has had no prior knowledge of the accident and is not in a position to make a defense As to the hardship and disadvantage under which the insurer labors, and the difficulty under which the injured party finds himself we think that the ends of justice require that the benefit of the doubt should be given to the injured party, who is in no way at fault, and whose loss was caused entirely by some one else, as against the insurer who has entered into the contract with full knowledge of the statute and for a monetary consideration." (Italics mine.)
A year after the Edwards decision, Section 1 of Act 253 of 1918 was amended by Act 55 of 1930, Section 2, Dart's Louisiana General Statutes, Section 4248, to broaden the scope of relief accorded injured third persons in several respects:
(1) It provided that "any judgment which may be rendered against the assured, for which the insurer is liable, which shall have become executory, shall be deemed prima facie evidence of the insolvency of the assured"; this provision was a Legislative solution to the second problem which had been presented in the Edwards casethat the insolvency or bankruptcy of the assured had not been judicially recognizedand incorporated into the earlier statute the Appellate Court's ruling on that particular point, 11 La.App. 176, 179, 123 So. 162, 164:"Defendant argues that the conditions, insolvency or bankruptcy and *127 an unsatisfied judgment, are both prerequisites, and that the insolvency or bankruptcy, although it may in fact exist, is not sufficient until there is a judicial recognition thereof. If this were the intention of the policy, and if such were permissible under the statute, the injured party, failing in his attempt to execute his judgment, would find himself under the necessity of instituting an action of involuntary bankruptcy or being able to prove the insolvency of the assured, and, as a practical proposition, there would be little possibility of his doing either. It is our opinion that the conditions to which we have referred were not intended to be cumulative, but that the second, an unsatisfied execution, was intended to be, for the purpose of the policy, proof of the first, insolvency or bankruptcy. Any other interpretation would, we believe, be unreasonable."
Once the judgment had become executory and the insurer liable therefor, the action could be brought against the insurer "within the terms and limits of the policy." This provision had existed in Act 253 of 1918 and was carried over into Act 55 of 1930, the latter permitting a presumption of insolvency in certain instances without the necessity of more formal proof.
(2) In addition to the rights conferred by the earlier Act, Act 55 of 1930 granted an optional right to injured third persons, or their heirs, to proceed directly against the liability insurer "within the terms and limits of the policy", either alone, or jointly with the insured.
(3) It gave the insurer the right to urge all defenses which the insured himself might interpose in an action against him. There is no right given the assured to urge the defense against the injured third person, of the breaching of the contract by the assured by not giving the insurer a timely notice. It would seem that the rule of common sense is that this is a matter entirely between the assured and its insurer, and that the insurer has a cause of action for the contract breaching against the assured.
It is illogical to construe "terms and limits of the policy" to mean one thing in one section of Act 55 of 1930 (the same section that existed in Act 253 of 1918) and another entirely different thing in a later section, when all the sections relate to the same subjectthe responsibility of a liability insurer to those who sustain injury for which the assured shall be found liable. Hence, what was said in the Edwards case as to the effect of "terms and limits of the policy" is equally applicable to the present set of circumstances.
The policy involved carried the following provisions:
"1. Notice of Accident, Claim or Suit. Coverages A, B and C. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable.
"5. Action Against Company. Coverages A and B. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."
The most recent expression of this Court on the subject of the effect of delayed notice to the insurer on the rights of injured third parties in tort actions is the case of Jackson et ux. v. State Farm Mut. Automobile Ins. Co., 1946, 211 La. 19, 29 So.2d 177. There we said, 211 La. at page 24, 29 So.2d at page 179:"Each case involving delayed notices must stand upon its own facts and circumstances. The Court may consider in balancing the equities, not only the time intervening between the accident and the date of notice to the insured, and whether or not the claim is a direct one by the injured persons, under Act 55 of 1930, but also when the parties first discovered that substantial injury had been done or that a claim would be made; the time when the injured party discovered that insurance existed and knew the identity of the insurer; what prejudice to the insurance company's defense has been caused by the delay; the good faith of the insured and injured party; and the existence *128 of any special circumstances, especially those indicating fraud or collusion."
In that case there had been a lapse of eighty-two days between the date of the accident and receipt of notice by the insurer; but the parents of the deceased child had informed the insured at the time of the accident that they would not prosecute a claim, and as soon as they informed him of their change of intention, he gave notice to the insurer.
The reading of the record shows that the district judge based his decision on the Jackson case, saying:
"The facts here are quite similar to those in the case of Jackson v. [State Farm Mut. Automobile] Ins. Co., [211 La. 19], 29 So.2d 177, decided by the Supreme Court in Dec. 1946. It is true that in the Jackson case both parents of the dead child informed insured that no claim would be made, while here it was only the parent who was present in this state that made such statement. In the Jackson case the insured only had his own private car covered, while here the Bakery Co. operated quite a number of vehicles, and had many accidents to report. Yet its president testifies that he had settled other claims where there appeared to be no liability, and did not report them to the insurer.
"It is clear that in the Jackson case the decision would have been the same had the plaintiffs waited a year to make their claim, so that the difference in time is not material. It is true that a better investigation may be made immediately after an accident, yet in this case there is no proof that the Ins. Co. was actually prejudiced because of the delay in receiving notice. No element of fraud, collusion or bad faith had been shown. There is no proof that the Bakery Co.'s action was deliberate in the sense that it intended to prejudice the rights of the insurer. Therefore if we apply to this case the reasonings of the Jackson case, there must be judgment against the Ins. Co."
The dissenting opinion of Judge Kennon on the appeal of this matter to the Court of Appeal, Second Circuit, quotes from Edwards case, supra, as follows, 39 So.2d 620, at page 626: "`But, argues defendant, the statute itself provides that such action as the injured party may maintain shall be "within the terms and limits of the policy," and since the policy requires notice, and since no notice was given in this case, this action is not brought within the terms and limits of the policy. We think that the words "terms and limits of the policy" were not intended to include the requirement of notice, but referred only to the amount which might be recovered and to those other warranties and conditions with which it was within the power of plaintiff to comply.'" (Italics mine.)
(Continuing from Judge Kennon's opinion):
"The Court in that opinion further noted that, except in rare cases, the party injured by the negligence of another has no knowledge as to whether or not the other is insured and having no knowledge as to whether there is any insurance at all, he certainly has no knowledge as to who the insurer may be, if there is one. In answer to the contention made by the attorneys for the casualty company in the Edwards case that it works a hardship upon the insurer to defend a case about which it knew nothing for a long time after the occurrence of the accident the Court said:
"`* * * we think that the ends of justice require that the benefit of the doubt should be given to the injured party, who is in no way at fault, and whose loss was caused entirely by some one else, as against the insurer who has entered into the contract with full knowledge of the statute and for a monetary consideration.'

* * * * * *
"In the case of Jackson et ux. v. State Farm Mutual Automobile Insurance Co., 211 La. 19, 29 So.2d 177, our Supreme Court held thatunder the facts and circumstances of that casethe eighty-two day delay of the insured in giving notice did not cut off the right of the injured party to recover against the insurer. The insured was not made a party defendant and the opinion of the Supreme Court in that case did not hold directly that the injured party may retain a cause of action against the insurer even though the insuredby his negligence in reporting the *129 accident, etc.,may have lost the protection granted him under the policy. However, the Court did sayafter holding in effect that the insured was justified in delaying giving notice to the company (after being assured by the parents of the young child that no claim would be made) that plaintiffs' case was strengthened by the fact that the action was one brought directly by the injured party against the insurer under Act 55 of 1930.
"Counsel for the casualty company has urged here the same point made in the dissenting opinion in the Jackson case, namely, that the direct right of action given the injured party by Act No. 55 of 1930 is subject to the provision of the statute which provides that the action in favor of the injured party shall be `within the terms, and limits of the policy,' and it seems difficult to reconcile the reasoning of the Court in the Edwards case, supra, and the necessity of enforcing the statutory requirement that the suit by the injured party must be within the terms and limits of the policy. However, the Supreme Court did not grant a writ in the Edwards case, in which the Court held that the legislative intent was that the original liability of the insurance carrier to the injured party is to be determined `within the terms, and limits of the policy,' and that the requirement of notice was not included in the quoted clause. Thus, if the offending car, though insured, was driven by a person unauthorized to drive under the terms and limits of the policy, the injured party would have no right against the insurance carrier. However, if at the time of injury, the circumstances are such that, under the terms and limits of the policy, the insurance carrier is liable, the rights of the injured party against the insurer under Act No. 55 of 1930 become fixed as of the moment of injury. This personal, statute-given right of the injured party against the insurance carrier is one which he can only lose, as indicated in the Edwards case, by his own acts, or by his own failure to act. The rights under the policy, as between the policyholder and his insurer are, after the accident, still subject to the further provisions of the policy relative to notice and other action which the policy may require of the insured, who of course, has a copy of the contract of insurance and who has, at least by implication consented to all its terms and conditions. Such a line of reasoning would recognize that a different situation exists as between the insurer and the injured party, between whom there is no contractual relationship.
"As indicated in the reasoning of the Edwards case, the injured party might be deprived entirely of the benefits granted him by Act No. 55 of 1930 were the Courts to hold that any and every failure of the insured, after the accident, to comply with every exacting requirement of the policy would defeat recovery by the injured party. For instance, the insurance company might put a condition in the policy that telegraphic notice of an accident must be given to its home office within twenty-four hours of its occurrence and in the event of failure to give such notice, the policy protection would not cover the accident. The policyholder, being in possession of the policy, would at least have the opportunity of finding out that such a telegram was necessary and protect his rights, but the injured party, after the accident, is often in the hospital, or if less fortunate, he may have lost his life, and he or his heirs may be some days or weeks becoming familiar with the full facts surrounding his injury. The injured party or his heirs have no copy of the contract of insurance and may not even know for many weeks that such a policy was in existence, much less what its [its] terms and conditions require."
If there should be any doubt as to the effect of Act 55 of 1930, it should for all times be put at rest by the opinion written by Mr. Justice Rogers in the case of Davies v. Consolidated Underwriters, 1942, 199 La. 459, 6 So.2d 351, which was not concerned with delayed notice of an accidental occurrence, but where the Court set out the general objects, purposes and effect of Act 55 of 1930 as to third persons, not parties to the policy contract, 199 La. 459, 476, 6 So.2d 351, 357:"That statute (Act No. 55 of 1930) gives the injured party an immediate right of direct action *130 against the insurer of the party responsible for the injuries. The statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public. Frequently the insured is financially irresponsible and the only recourse of a person injured by the negligence of the insured is against his insurance carrier. But rarely has the injured party knowledge as to who may be the insurer of the party responsible for his injuries. It is therefore not within his power to give a notice as required by the policy and the enforcement of a policy provision requiring notice to be given by the insured automatically and without any action on his part deprives him of the right of action granted by law. It is not desirable that he should be divested of such action, and that result should not obtain except in a very clear case. This is not such a case. By maintaining plaintiffs' action, the defendant company is not deprived of any substantial right. Its liability remains contingent and is dependent upon proof of the negligence of Stahl, the driver of the automobile." (Italics mine.)
The proof of negligence on the part of the assured has been acquiesced in by the assured, because it has taken no appeal from the judgment which holds it negligent. It was acquiesced in by the insurance company, because there is no such issue now before the court as the negligence of the assured. In the exercise of our supervisory jurisdiction, we must look to our own decisions to reconcile and to iron out the theoretical standards of liability set by the respective courts of appeal. We are duty bound to make those theories conform to the law. The weight of the jurisprudence of the Courts of Appeal and our own is that under a case so circumstanced as this, and where the third person is not at fault that he cannot be made liable for the breaching of an agreement by the insured with his insurer. The logical analysis of our own Mr. Justice Rogers of this law lives after him.
For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is reversed, annulled and set aside, and it is ordered, adjudged and decreed that the judgment of the district court against General Casualty Company of America in solido be reinstated, affirmed and made the judgment of this Court, in the amount therein set forth. Defendant-appellee to pay all costs of court.
HAMITER, J., concurs in the decree.
HAWTHORNE, J., dissents and assigns written reasons.
McCALEB and LE BLANC, JJ., dissent with written reasons.
McCALEB, Justice (dissenting).
According to the facts, as found by the Court of Appeal, plaintiffs are suing Monroe Bakery, Inc. and its public liability insurance carrier for damages for the death of their minor daughter, who was killed by a truck of the bakery company. The accident occurred on January 8, 1945 and suit was filed against the bakery company nearly one year later, on January 7, 1946. On May 2, 1946, the insurer of the bakery was joined as a defendant to the suit by a supplemental petition. See 39 So.2d 620.
The defense of the insurer, which was sustained by the Court of Appeal, is that it had no notice of the accident until over a year thereafter, to witJanuary 14, 1946, when its agent received a letter from the assured in which was enclosed the citation and a copy of the petition in the instant suit, despite the fact that its liability under the policy issued to the bakery is conditioned upon written notice being given "by and on behalf of the insured to the company or any of its authorized agents as soon as practicable."
No one could contend, with any plausibility, that there was a just cause or excuse for the assured's failure to comply with the policy contract until over a year after the occurrence of the accident or that the unreasonable delay did not constitute a violation by the assured of the condition of the policy that notice of the accident would be required as soon as practicable. Therefore, *131 the decisions of this court in Jones v. Shehee-Ford Wagon & Harness Co., 183 La. 293, 163 So. 129 and Jackson v. State Farm Mut. Automobile Ins. Co., 211 La. 19, 29 So.2d 177 are not applicable. Indeed, the majority view is pitched entirely, as I understand it, upon the resolution that Act 55 of 1930 is authority for a recovery by plaintiffs against the insurance company and that the latter is without right to defend on the ground that its assured has breached the condition of the policy requiring notice as soon as practicable.
It is my belief that this conclusion, far from being sustained by the provisions of Act 55 of 1930, is in direct contravention of them. Act 55 of 1930 amends Act 253 of 1918, which was an act providing that no policy of insurance should be issued without containing a proviso that the insolvency or bankruptcy of the assured shall not release the insurer from liability for injury sustained or loss occasioned during the life of the policy and further declaring that, in case of such insolvency or bankruptcy, an action may be maintained by the injured person against the insurer "within the terms and limits of the policy". The 1930 amendment repeated these provisions of the 1918 act and further granted to the injured person a right of direct action against the insurer company within the terms and limits of the policy of liability insurance. However, the statute contains this important proviso: "It being the intent of this act that any action brought hereunder shall be subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured; provided the term and conditions of such policy contract are not in violation of the laws of this State." (Emphasis mine.)
I daresay that no one would seriously maintain that the provision of the policy that the insured shall furnish notice to the insurer as soon as practicable is not a perfectly lawful condition or that, in an action between the insured and the insurer, the latter would not be permitted to urge, as a valid defense, that the insured violated the policy by failure to give notice until over one year after the accident occurred.
If this be true, then I cannot perceive why the insurer is to be deprived of this defense in an action brought by the injured person since the very statute, which granted plaintiffs the direct action, declares in unequivocal language that "any action brought hereunder shall be subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured * * *".
The majority opinion seems to derive comfort from the decision in 1929 of the Court of Appeal for the Parish of Orleans in Edwards v. Fidelity & Casualty Co. of New York, 11 La.App. 176, 123 So. 162, where, in construing the clause "within the terms and limits of the policy" as used in Act 253 of 1918, it was held that the failure of the assured to notify the insurer of the accident, as required by the policy, did not deprive the injured person filing suit thereon of his right of action as those words were not intended to include the requirement of notice but referred only to the amount which might be recovered and to other warranties and conditions with which the injured person could comply. But the majority fail to take in account that, while the 1930 amendment granted greater rights to the injured person by according a right of direct action against the insurer, it specifically restricted that right and made it subject to all lawful conditions of the policy contract and to the defenses which could be urged by the insurer in a direct action brought by the insured. Manifestly, by the latter provision, the Legislature placed its stamp of disapproval on the decision of the Court of Appeal in Edwards v. Fidelity & Casualty Company, supra, as was recognized by a majority of the members of the same court (including the author of the Edwards decision) in a later case. See Jones v. American Mut.
*132 Liability Ins. Co., La.App., 185 So. 509-517.[1]
Much reliance is placed by the majority upon certain language used by this court in Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351. But, admittedly, that case did not involve the enforceability of a condition in the policy requiring the giving of notice to the insurer; the provision of the policy there depended upon was found to be ambiguous and, hence, not available to the insurer as a defense. The expressions of the court regarding the purpose of Act 55 of 1930 are sound but I cannot discern that they control or in anywise fortify the conclusion reached in the case at bar.
I think the judgment of the Court of Appeal should be affirmed.
LE BLANC, Justice (dissenting).
To fortify its position and to support its ruling the majority opinion relies, among others, on a dissenting opinion on the rehearing in the case of Duncan v. Pedarre, 164 So. 498, decided by the Court of Appeal for the First Circuit in 1935, and quotes at length from it. It is rather significant that the author of that dissenting opinion was the author of the majority opinion for that same Court in the case of Jackson v. State Farm Mutual Automobile Insurance Company, La.App., 23 So.2d 765, in which he commented on his dissenting opinion in the Duncan v. Pedare case, making it evident that his dissent was based on the evidence that the assured in that case was not fully informed of the fact that the accident had caused the loss covered by the policy and what was the extent of the injury that had been sustained; but as soon as he was so informed and a claim for damages had been made on him, he had given notice to the insurer. The opinion prepared by him in Jackson v. State Farm Mutual Automobile Insurance Company leaves but little doubt that he considered the giving of notice as required under the policy as a condition precedent to recover, even though in that case the suit had been brought by someone other than the assured. It is true that the case of Jackson v. State Farm Mutual Automobile Insurance Company was reversed on review by this Court but I deem it necessary to make these comments in order to substantiate my position as one of the concurring judges in the opinion rendered by the Court of Appeal.
I have not deviated from that position and find no reason to do so at this time in the case under consideration for I fully concur in the reasons assigned by Justice McCaleb in his dissenting opinion that when Act 55 of 1930 by its own terms expressed its intent as being "that any action brought" under its provisions "shall be subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured; * * *" that that language meant exactly what it said; that any action meant any form of action that may be brought under the terms of the Act by anyone having a right or cause of action and that to such action the insurer could urge any and all defenses arising under the conditions of the policy the same as they could be urged by it in an action brought by the insured. For these reasons I respectfully dissent.
HAWTHORNE, Justice (dissenting).
I am in full accord with the decision of the Court of Appeal, Second Circuit, reported 39 So.2d 620, and the well written reasons therefor, and am therefore of the opinion that this judgment should be affirmed. See my dissenting opinion in Jackson et ux. v. State Farm Mut. Automobile Ins. Co., 211 La. 19, 25, 29 So.2d 177.
NOTES
[1] See also Tulane Law Review, Vol. X, page 69 and Vol. XI, page 443. In the latter Article is found the following comment: "The 1930 Act, which contains an express clause designed to overrule the Edwards decision, requires compliance with policy terms that do not deprive the third party of his right of direct action against the insurer."