Mr. Justice Pérez Pimentel concurs in the result.

MANUEL PÉREZ SOTO ET AL., Plaintiffs and Appellants, *v.* MARYLAND CASUALTY CO. ET AL., Defendants and Appellees.

No. 11303. Argued May 2, 1955.—Decided June 30, 1955.

*Eduardo Pérez Casalduc* for appellants. *Charles R. Hartzell, Rafael O. Fernández, P. Juvenal Rosa, José L. Navas, Daniel F. Kelly, Jr.,* and *Vicente M. Ydrach* for appellees.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

This is a suit for damages by the heirs of Manuel Pérez Soto against Maryland Casualty Company and Félix Vale Soto. Pérez died from the injuries he received when struck in 1949 by a jeep owned by the Government of Puerto Rico which was being driven by Vale Soto in the performance of his duties as a policeman. After a trial on the merits, the Superior Court entered a judgment of $9,160 and $500 as attorney's fees in favor of the plaintiffs against Vale Soto but dismissed the complaint as to Maryland Casualty Company. The plaintiffs appealed from that part of the judgment dismissing the complaint as to the insurance company.

The transcript of evidence was not filed in this Court. The record contains only the amended complaint, filed in 1953, the answer, the findings of fact and law and judgment of the trial court, the insurance policy involved herein, and the order denying the motion for reconsideration. Although the original complaint is not in the record, it is evident from the findings of the trial court that the original complaint was filed prior to 1952 and that it joined the insurer but not the insured—"Insular Government of Puerto Rico"—as a defendant.[1]

Under § 175 of the Insurance Law, as amended by Act No. 19, Laws of Puerto Rico, 1929, prior to 1952 an insurer could be sued in only two ways: (1) by a suit against

---

[1] No question of statute of limitations was raised insofar as the insurer is concerned, as it was a defendant in the original complaint which was apparently filed within a year from the date of the accident. *Bithorn* v. *Santana*, 68 P.R.R. 281, 285.

the insurer alone after the plaintiff had obtained a final judgment against the assured; or (2) by joining the assured and the insurance company in a single suit. Since the plaintiffs did not first obtain a final judgment against the insured or join the Government of Puerto Rico and the insurer in the original complaint, the latter did not state a cause of action against the insurer when it was filed prior to 1952. *United States Casualty Co.* v. *District Court*, 66 P.R.R. 884, 886.

However, the trial court never passed on the motion of the insurance company to dismiss the original complaint. And thereafter § 175 was amended by Act No. 60, Laws of Puerto Rico, 1952, to provide that a suit may be filed against the insurance company alone.[2] The question is therefore presented as to whether under § 175 as amended in 1952 the amended complaint filed in 1953 against Vale Soto and the insurance company states a cause of action against the latter despite the failure to join the "Insular Government of Puerto Rico" as the insured.

The trial court held that the 1952 amendment did not authorize the plaintiffs to file an amendment complaint in 1953 against the insurer without joining the assured. Its theory was that the said amendment was not merely a procedural measure; rather, according to the trial court, it

---

[2] Section 1 of Act No. 60 of 1952, 26 L.P.R.A. § 1074, amending § 175 reads as follows:

"Section 1.—Section 175 of Act No. 66, approved July 6, 1921, known as Insurance Law of Puerto Rico, as amended, is hereby amended to read as follows:

'Section 175.—Any clause in an insurance contract depriving the insured of his right to claim in the courts of justice, at any time after the occurrence of the accident against which the insurance was made, the amount of any loss suffered and which has been the object of such insurance, shall be illegal. When the person causing the damage is insured against the accident which caused the loss or damage, and in the case where the insurance policy has been issued in favor of a third person, the action to claim such indemnity as may be proper may be presented *against the insurance company only*, or jointly against the insured person and the insurance company. The court shall determine not only the liability of the company, but also the amount of the loss.'" (Italics ours).

created a cause of action against the insurer which did not previously exist; consequently, it could not be applied retroactively to an accident which occurred in 1949.

We cannot agree with the reasoning of the Superior Court that the 1952 amendment of § 175 created a cause of action against the insurer which did not previously exist. For many years prior to 1952 § 175 permitted a plaintiff to file suit jointly against the insured person and the insurance company. We have pointed out that § 175 as it read prior to 1952 ". . . is a purely procedural device to avoid two suits; *that it does not create any new substantive rights; that a suit against the insurance company alone will not lie;* and that a condition precedent to liability of the company is a finding of liability of the assured." *Water Resources Authority* v. *Irizarry*, 72 P.R.R. 601, 607. (Italics ours).

The *Irizarry* case demonstrated graphically the inequitable nature of the provision in § 175 that suit against both the insured and the insurer was required in those cases where the insured could not be served in Puerto Rico or his property attached here. We stated that (p. 608) ". . . perhaps the Legislature should amend § 175 to permit suit against insurance companies alone *under these circumstances;* obviously, the failure to serve the defendant personally is a windfall for the company." (Italics ours.)

The Legislative Assembly promptly adopted our suggestion. Section 1 of Act No. 60 of 1952 amended § 175 by inserting therein the phrase we have italicized in quoting § 175 in footnote 2. This amendment gave the plaintiff the alternative of suing either the insurance company alone or together with the assured. Obviously, the amendment was designed to solve the problem posed by the *Irizarry* case, where the insured could not be served or his property attached, enabling the insurance company thereby to escape liability. But there is nothing in the amendatory language or its legislative history to suggest that the Legislative Assembly meant to go further and to create, as in Louisiana,

"a separate and distinct cause of action against the insurer" different from the cause of action against either the tort-feasor alone or together with the insurer.[3] Rather it seems. clear that the Legislative Assembly left the nature of the insurer's liability unchanged; it was still contingent on a finding of liability of the assured.

In view of the foregoing, we cannot agree with the Superior Court that the 1952 amendment of § 175 created a cause of action against the insurance company which did not previously exist. On the contrary, the substantive questions of (1) the primary liability of the assured and (2) the subsidiary liability of the insurer were left intact. The 1952 amendment merely changed the procedure by which the subsidiary liability of the insurer, which was still contingent on the liability of the assured, could be established; it may now be determined by suing the insurer alone. It is still necessary to prove the assured's negligence and primary liability even though the suit is in form against the insurer alone.

---

[3] A Louisiana statute gives the plaintiff in an automobile accident. case at his option " . . . a right of direct action against the insurer . . .". And the " . . . said action may be brought against the insurer alone or against both the insured and insurer, jointly and in solido." La. Rev. Stat. Tit. 22 § 655. The scope of this statute was recently described in Lumbermen's Mut. Cas. Co. v. Elbert, 348 U. S. 48, 99 L. ed. 83, 85-6: " . . . the Louisiana courts have differentiated between actions brought by an injured party against the insurer alone and those brought against either the tortfeasor alone or together with the insurer. In the former action, the insurer is foreclosed from asserting defenses such as coverture, normally available to the tortfeasor. Edward v. Royalty Indemnity Co., 182 La. 171, 161 So. 191. Similarly, the insurer is severely restricted in advancing technical defenses based upon the terms of the policy, such as a failure of notice, when the injured party brings a direct action. Jackson v. State Farm Mut. Auto. Ins. Co. 211 La. 19, 29 So. 2d 177. While either type of action encompasses proof of the tortfeasor's negligence, in the separate suit against the insurer a plaintiff must also establish liability under the policy. The Louisiana Courts have characterized the statute as creating a separate and distinct cause of action against the insurer which an injured party may elect in lieu of his action against the tortfeasor. West v. Monroe Bakery, 217 La. 189, 46 So. 2d 122; Jackson v. State Farm Mut. Auto. Ins. Co. (La.) supra." (Italics ours.)

We have repeatedly held that procedural statutes are applied retroactively to pending cases. *Fajardo* v. *District Court*, 69 P.R.R. 441, 446, and cases cited; *Pagán* v. *Otero*, 69 P.R.R. 470, 474; see *People* v. *Superior Court*, 75 P.R.R. 501, 516. It follows that the procedural change embodied in the 1952 amendment to § 175 whereby a suit may be filed against the insurer alone applied to the instant case, which was pending when the 1952 amendment became effective. *Waddill* v. *Masten*, 90 S. E. 694 (N.C., 1916). We therefore hold that the amended complaint, filed in 1953, stated a cause of action against the insurer despite the fact that the insured was not joined as a defendant.

██ Vale Soto was not a special agent of the State as that term is used in § 1803 of the Civil Code, 1930 ed. Consequently, although Vale Soto would be personally liable for his negligence while driving the jeep in the performance of his duties as a policeman, the State would not be liable therefor. *Soto* v. *Luchetti*, 58 P.R.R. 715; *Peña* v. *People*, 68 P.R.R. 870. And since the subsidiary liability of the insurer continues to depend on the primary liability of the insured despite the 1952 amendment of § 175, the company, which did not file a brief in this Court, might conceivably have argued that it was also not liable. But an indorsement of the policy involved herein provides that the insurer will not assert "the immunity" of the assured from tort liability, unless requested by the insured to interpose such defense. It also provides that if the insured is relieved of liability because of "its immunity", the insurance shall apply to officers and employees of the insured acting as such.[4]

---

[4] This indorsement reads as follows:

"1. The Company agrees that it will not use, either in the adjustment of claims or in the defense of suits against the insured, the immunity of the insured from tort liability, unless requested by the insured to interpose such defense.

"2. The insured agrees that the waiver for the defense of immunity shall not subject the company to liability for any portion of a claim, verdict or judgment in excess of the limits of liability stated in the policy.

As already noted, in this jurisdiction as a matter of general law the subsidiary liability of an insurer is still contingent on the primary liability of an insured, despite the 1952 amendment of § 175. But there is no reason why a contract of insurance may not provide for a different rule. That is precisely what occurred here. By virtue of the endorsement there need be no finding of primary liability by the insured; instead, the insurer will be liable if the State would have been liable in the absence of any defense of "immunity" from tort liability. We interpret the indorsement as an agreement that the insurer will be liable wherever it would have been liable if the State were a private entity. As thus interpreted, the indorsement clearly makes the insurer responsible here despite the fact that, in view of the special agent requirement, the State itself could not be held liable in this case.

We would reach the same result if the insurer at the request of the insured had asserted the latter's "immunity". The endorsement provides that under those circumstances the policy shall apply to officers and employees of the insured. This would mean in effect that employees like Vale Soto would be among those who constitute "the insured". And the subsidiary liability of the insurer would then depend not on the primary liability of the "Insular Government of Puerto Rico" who paid the premiums, but on the primary liability of such additional insured persons as officers and employees thereof, including Vale Soto. And under the facts

---

"3. The Company agrees that if the insured is relieved of liability because of its immunity, either by interposition of such defense at the request of the insured or by voluntary action of a court, the insurance applicable to the injuries on which such suit is based, to the extent to which it would otherwise have been available to the insured, shall apply to officers and employees of the insured in their capacity as such, provided that all defense other than immunity from tort liability which would be available to the company but for said immunity in suits against the insured or against the Company under the policy shall be available to the Company with respect to such officers and employees in suits against such officers and employees or against the company under the policy."

,of this case, the insurer would have been held liable in view of the findings of the trial court that the accident occurred due to the negligence of Vale Soto. This is analogous to the situation where a policy is issued with an omnibus clause making the insurer liable for the negligence of anyone driving an automobile belonging to the insured with the consent of the insured. Our substantive law does not make the owner of a car liable for the negligence of a third person merely because the latter drove it with the consent of the owner. *Díaz* v. *Iturregui,* 72 P.R.R. 191. But there is, nothing to prevent the parties from agreeing to a contract of insurance under which the insurer makes itself liable for the negligent conduct of a third person driving an automobile with the consent of the owner, who pays the premium for such a policy. Here again the third person in effect becomes an additional insured person and the subsidiary liability of the insurance company, even if it is sued alone, is contingent on a finding that the said third party as an additional insured person—but not the owner who as the insured paid the premium—is primarily liable.

The judgment of the Superior Court, insofar as it dismissed the complaint against the insurance company, will be reversed, and a new judgment entered making both the insurance company and Vale Soto liable for the damages of $9,160, the attorney's fees of $500, and the costs.[5]

[5] Vale Soto was in default in the trial court and did not appeal from the judgment against him.