KNOLL, Justice,
dissenting.
Lin this matter, we are presented with the issue left unanswered in Anderson v. Ichinose, 98-2157, n. 7 (La.9/8/99), 760 So.2d 302, 306, n. 7, of “whether a claims-made insurer may raise, in an action by the victim of the insured’s tort, the defense of a non-prejudicial failure of the timely notified insured to give notice to the insurer during the policy period.” Because I disagree with the legal resolution of this issue by the majority, I respectfully dissent.
In Anderson, with Justice Lemmon as organ for the court, we held claims-made policies do not violate public policy in a situation where the claim was neither timely made nor reported to the insurer. We, however, left open the question of whether a third party victim, who is denied coverage under a claims-made policy because the timely notified insured failed to notify the insurer timely, may resort to the public policy provisions of the Direct Action statute to obtain coverage. The majority herein holds the Direct Action statute affords a victim the right to sue the insurer directly when a liability policy covers a certain risk, but does not extend the protection to risks not covered or excluded by the policy. Accordingly, because the Lexington policy only covered claims made and reported within the policy period, the majority finds the' Direct Action statute does not mandate coverage where none exists and, thus, confers no cause of action on Gorman. This reasoning, in my view, is in error.
12As the majority noted, the Direct Action statute provides “[t]he injured person *899 or his survivors or heirs ... shall have a right of direct action against the insurer within the terms and limits of the policy.” La.Rev.Stat. § 22:1269(B)(1). The statute further provides:
C. It is the intent of this Section that any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.
D. It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable....
La.Rev.Stat. § 22:1269.
The majority focuses heavily upon the phrase “the terms and limits of the policy” in its analysis without first examining the legality of those very terms and limits under our law. In Livingston Parish Sch. Bd. v. Fireman’s Fund Am. Ins. Co., 282 So.2d 478 (La.1973), this Court explained: “in the absence of conflict with a statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract.” 282 So.2d at 481. It logically follows, when a liability policy or contract, which is executed for the benefit of all injured persons, contains terms and conditions in violation of the laws of this state, including those enacted for the protection of the public interest, then the action brought by the injured party is neither subject to those conditions nor to the defenses arising there under. See La. Civ.Code art. 7 (“Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest”). In my view, the notice requirement herein conflicts with the policy and intent of the Direct Action statute and effectively restricts the vested rights of |sinjured parties by allowing coverage to be defeated in an otherwise timely and valid claim when an insured without good cause blatantly fails to give notice.
At its most basic, the direct action is an application of the principle of contract law that a third-party beneficiary may sue to enforce a contract made for his benefit even though not himself a party to the agreement — a quasi stipulation pour au-trui William Shelby McKenzie and H. Alston Johnson, III, 15 La. Civ. L. Treatise, Insurance Law & Practice § 2:6 (4th ed.). It was initially enacted to insure the payment of judgments arising out of an injury caused by an insured, who, due to insolvency or bankruptcy, could not pay, but had contracted for liability insurance covering the tort action. Id. at § 2:2. It has since evolved into a true right of direct action, and one of its most distinctive characteristics is how by its language and its judicial interpretations it “almost entirely remove[s] the insurance contract from governance by the established principles of contract law. The contract becomes one infused with important public policy concerns, and candidly described as written for the benefit of a non-party: the person injured by the blameworthy conduct of one of the contracting parties.” Id. at § 2:6. This concept is nowhere more evident than in the interpretation of the language of the statute granting a direct action to the injured person “within the terms and limits of the policy.”
This phrase upon which the majority herein so heavily relies has been present in *900 the statute since its inception in 1918.[1] However, unlike the majority, our courts have since even then found:
|4the words “terms and limits of the policy” were not intended to include the requirement of notice, but referred only to the amount which might be recovered and to those other warranties and conditions with which it was within the power of plaintiff to comply.
Edwards v. Fidelity & Cas. Co. of New York, 11 La.App. 176, 178, 123 So. 162,163 (Orleans 1929)(emphasis added). In West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950), this Court squarely faced the interpretation of this phrase and concluded:
It is illogical to construe “terms and limits of the policy” to mean one thing in one section of [the Direct Action statute](the same section that existed in Act 253 of 1918) and another entirely different thing in a later section, when all the sections relate to the same subject — the responsibility of a liability insurer to those who sustain injury for which the assured shall be found liable. Hence, what was said in the Edwards case as to the effect of “terms and limits of the policy” is equally applicable to the present set of circumstances.
217 La. at. 202, 46 So.2d at 127.
The West court also explained our jurisprudence consistently upheld the statutorily granted right against the insurer “regardless of a stipulation to the contrary between the insurer and the insured in the policy contract and regardless of dilatory conduct on the insured’s part in giving notice.” Id. at 191, 46 So.2d at 123. I agree with this long-standing jurisprudence and find the majority’s statement that “[a]ny right that Gorman might have had under the Lexington policy did not vest at the time of her son’s injury,” Op. at 897, is a legally erroneous statement. A tort victim’s rights do not go in and out of vestment. Her substantive cause of action against the insured vested upon her son’s death. Whether her action was covered under the policy and whether she can proceed against Lexington is another matter.
Clearly, the Direct Action statute grants Gorman a right of action against the insurer “within the terms and limits of the policy.” This is a “CLAIMS MADE” policy, in which “COVERAGE IS LIMITED GENERALLY TO LIABILITY FOR | .¡CLAIMS FIRST MADE AGAINST YOU AND REPORTED IN WRITING TO U.S. WHILE THE COVERAGE IS IN FORCE”:
We shall pay those amounts that the Insured becomes legally obligated to pay to compensate others for bodily injury, property damage, or personal injury arising out of the Insured’s wrongful act. The wrongful act shall take place on or after the retroactive date, but before the end of the policy period, and shall arise solely in your capacity as a law enforcement agency. A claim for a wrongful act shall be first made against the Insured and reported to us in writing during the policy period or any extended reporting period we provide under this policy.
See Op. at 890-91.
It is undisputed the date of the wrongful act fell within the policy period, the act *901 arose solely in the insured’s capacity as a law enforcement agency, and Gorman timely made the claim against the insured within that same policy period in accordance with the terms and limits of the policy. At that time, her right of direct action was fully conferred. Although the majority reads the reporting requirement as a term of the contract, this requirement is for all intents and purposes a notice requirement and, as such, does not fall within the “terms and limits of the policy” as historically defined by this Court. See West, 217 La. at. 191, 46 So.2d at 123; see also Edwards, 11 La.App. at 178, 128 So. at 163. While the failure to notify can be invoked against the insured, its failure to notify the insurer — a condition over which Gorman had no control — cannot take away the vested right of a third-party beneficiary who did all within her power to preserve her rights. Therefore, I find our Direct Action statute confers a right of action in Gorman against Lexington for the tragic death of her son and agree with the court of appeal the notice provision could not be used as a coverage defense against a third party victim who had no knowledge of the provision and who had taken steps to pursue her legal remedies. See Gorman v. City of Opelousas, 12-1468, p. 3 (La. LAPP. 3 Cir. 5/1/13), 2013 WL 1831075 (unpub’d)(quoting Pittman v. Nutmeg Ins. Co., 97-524, p. 5 (La.App. 3 Cir. 3/6/98), 708 So.2d 832, 834).
Nevertheless, even if the reporting requirement would somehow be constituted as a term or limit of the policy contractually negotiated by the parties, I still would recognize Gorman’s direct action against Lexington because in my view the notice requirement derogates from the public policy behind our Direct Action statute. As previously stated, the statute was enacted from its inception to protect tort victims from insolvent tortfeasors by extending to them the insurance for which said tortfea-sor contracted. McKenzie & Johnson, supra, § 2:2. Given the payment of a judgment by the City is discretionary, see La. Const, art. XII, § 10(C) and La.Rev.Stat. 13:5109(B)(2),[2] Gorman is essentially facing an insolvent insured and should be granted the benefit the City contracted for — coverage for liability for wrongful acts committed and subsequent claims made during the policy period — as she properly took all the necessary steps to preserve and pursue the legal remedies afforded to her by the Legislature in our Direct Action statute.
In West, this Court explained:
|7It is quite true that [insured’s] failure to give notice to his insurer would have prevented his recovery from the *902 insurer, had he himself paid the judgment * * * but that is because [the insured] had so contracted. As between parties to a contract, the contract itself is the law of the case. Here, however, the law of the case is not found solely within the four corners of the policy of insurance, but is contained primarily in the statute to which we have referred.
[[Image here]]
We are told that it works a hardship on the insurer to be called on to defend an action of this kind, as he has had no prior knowledge of the accident and is not in a position to make a defense. As to the hardship and disadvantage under which the insurer labors, and the difficulty under which the injured party finds himself we think that the ends of the justice require that the benefit of the doubt should be given to the injured party, who is in no way at fault, and whose loss was caused entirely by some one else, as against the insurer who has entered into the contract with full knowledge of the statute and for a monetary consideration.
217 La. at 198-200, 46 So.2d at 122 (quoting Edwards v. Fidelity & Cas. Co. of New York, 11 La.App. 176, 123 So. 162 (Orleans 1929))(Italics in original). The Court then concluded:
As indicated in the reasoning of the Edwards case, the injured party might be deprived entirely of the benefits granted him by [the Direct Action statute] were the Courts to hold that any and every failure of the insured, after the accident, to comply with every exacting requirement of the policy would defeat recovery by the injured party. For instance, the insurance company might put a condition in the policy that telegraphic notice of an accident must be given to its home office within twenty-four hours of its occurrence and in the event of failure to give such notice, the policy protection would not cover the accident. The policyholder, being in possession of the policy, would at least have the opportunity of finding out that such a telegram was necessary and protect his rights, but the injured party, after the accident, is often in the hospital, or if less fortunate, he may have lost his life, and he or his heirs may be some days or weeks becoming familiar with the full facts surrounding his injury. The injured party or his heirs have no copy of the contract of insurance and may not even know for many weeks that such a policy was in existence, much less what its terms and conditions require.
.... The statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public. Frequently the insured is financially irresponsible and the only recourse of a person injured by the negligence of the insured is against his insurance carrier. But rarely has the injured party knowledge as to who may be the insurer of the party responsible for his injuries. It is therefore not within his power to give a notice as required by the Impolicy and the enforcement of a policy provision requiring notice to be given by the insured automatically and without any action on his part deprives him of the right of action granted by law. It is not desirable that he should be divested of such action, and that result should not obtain except in a very clear case. This is not such a case. By maintaining plaintiffs’ action, the defendant company is not deprived of any substantial right. Its liability remains contingent and is dependent upon proof of the negligence of [the insured], the driver of the automobile.”
*903 Id. at 208-10, 46 So.2d at 129-30 (quoting West v. Monroe Bakery, 39 So.2d 620 (La.App. 2d Cir.1949) (Kennon, J., dissenting))(Italics in original).
While much could be made of the fact the policies in both West and Edwards upon which it relied were occurrence policies, I “see no meaningful distinction between the loss of rights suffered by an injured third party for failure to give notice under an occurrence policy and the loss of rights suffered by an insured third party for failure to give notice under a ‘claims made’ policy.” Murray v. City of Bunkie, 96-297, p. 8 (La.App. 3 Cir. 11/6/96), 686 So.2d 45, 50, writ denied, 97-0514 (La.5/9/97), 693 So.2d 767. In both instances, injured third parties become vested with rights under our Direct Action statute, and in both instances, the enforcement of the notice provisions would deprive injured third parties of their rights under the Direct Action statute when it was not within their power to give notice. Such a divestment is in direct derogation of our law and the policy and intention of the Legislature in granting the direct action. See La.Rev.Stat. § 12:1269(C); La. Civ.Code art. 7.
Significantly, our Legislature explicitly prohibits insurance contracts from containing “any condition, stipulation, or agreement limiting [the] right of action against the insurer ... to a period of less than one year from the time when the cause of action accrues_” La.Rev.Stat. § 22:868(B). By restricting the contractual freedom of the parties, the Legislature thus ensures the protection afforded by our rules of prescription. The provision in the Direct Action statute | prohibiting compliance with terms and limits “in violation of the laws of this State” likewise restricts the ability of the contracting parties to limit the tort victim’s right of action against the insurer. Here, the notice requirement coupled with the insured’s blatant and unjustified failure to provide notice would not only limit, but effectively destroy the tort victim’s right of action in an otherwise timely filed suit, and as such, it should be void as against the public policy provisions of our Direct Action statute. See La. Civ.Code art. 7 (“any act in derogation of such laws [enacted for the protection of the public interest] is an absolute nullity”); see also, La.Rev.Stat. § 22:868(C)(“any such condition ... shall be void”).
Accordingly, I would find the contractual notice provision cannot be used to deprive the injured third party of her vested rights under the Direct Action statute and affirm the judgment of the Court of Appeal.
11JOHNSON, C.J., dissents for the reasons assigned by KNOLL, J.

. In Act 253 of 1918, the Legislature made it a misdemeanor for a company to issue any policy "against liability unless it contains a provision ... that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy.” See McKenzie & Johnson, supra § 2:2 (quoting 1918 La. Acts 253). "In such a case, i.e., the insolvency of the insured, 'an action may be maintained within the terms and limits of the policy by the injured person or his or her heirs, against the insurer.' " Id.

. As we explained in Newman Marchive Partnership, Inc. v. City of Shreveport, 07-1890 (La.4/8/08), 979 So.2d 1262,
... the constitution delegated to the legislature the power to determine how money judgments rendered against the state would be executed. La. Const, art XII, § 10(C). The legislature acted on this authority when it passed LSA-R.S. 13:5109(B)(2), stating, "[a]ny judgment rendered in any suit filed against ... a political subdivision ... shall be exigible, payable, and paid only ... out of funds appropriated for that purpose by the named political subdivision....” (Emphasis added).... LSA-R.S. 13:5109(B)(2) envisions that whenever a judgment is rendered against the state, a state agency, or a political subdivision of the state, the judgment is payable only out of funds appropriated “for that purpose,” i.e. money set aside specifically to satisfy a particular judgment. Id. This is in accord with what we previously stated in Hoag [v. State, 2004-0857 (La. 12/1/04), 889 So.2d 1019], that “La. R.S. 13:5109(B) is a clear expression of legislative intent; judgments rendered against the state are payable only by specific appropriation by the legislature.” 2004-0857, p. 5, 889 So.2d at 1023 (emphasis added).
07-1890 at pp. 6-7, 979 So.2d at 1267 (emphasis in original).